IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILIP A. GARLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No.  05-140 |
| | ) |
| US AIRWAYS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

On or about November 28, 2005, pro se Plaintiff Philip A. Garland ("Plaintiff" or "Garland") filed, with leave of court, a 17-count second amended complaint in the above-captioned action against 24 defendants including Defendants Air Line Pilots Association, Int'l ("ALPA"), Duane E. Woerth ("Woerth"), and James W. Johnson ("Johnson") (collectively, "ALPA Defendants"), arising out of the termination of Plaintiff's employment as a pilot for US Airways.  See Docket No. 13.  Pending is the ALPA Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 37).  After a careful review of the submissions by the parties and for the reasons discussed in this Opinion, the Motion to Dismiss is granted.

## I.  BACKGROUND

### A.  Factual Background

Unless otherwise noted, the facts in this section are taken from Plaintiff's

Second Amended Complaint.

Plaintiff was employed by Defendant US Airways as a pilot from 1982[1] until the termination of that employment on or about April 27, 2001.[2]  At all pertinent times, Plaintiff was a dues-paying member of ALPA, the collective bargaining representative for airline pilots, including Plaintiff.  ALPA filed a grievance on behalf of Plaintiff under the collective bargaining agreement ("CBA"), challenging the termination of Plaintiff's employment.  Defendant Woerth is ALPA's President, and Defendant Johnson is an attorney retained by ALPA to represent Plaintiff in proceedings before Defendant US Airways Pilot's System Board of Adjustment ("System Board"), a five-member federal labor arbitration board that held an evidentiary hearing on Plaintiff's grievance on or about July 17, 2002.  On February 7, 2003, the System Board issued a final opinion and award finding that US Airways was justified, pursuant to the CBA, in its decision to terminate Plaintiff's employment.

In the Second Amended Complaint, Plaintiff alleges that the ALPA Defendants did not represent him fairly, that the grievance process was "tainted and spoiled," that the evidentiary hearing was "suspect and substandard," and that there is evidence of "conspiracy, corruption and collusion" among ALPA, US Airways and

---

[1]  US Airways originally hired Plaintiff in 1984.  In 1986, Plaintiff sued US Airways alleging racial discrimination in US Airways' hiring and recruitment practices.  See Garland v. US Air, Inc., 767 F. Supp. 715 (W.D. Pa. 1991).  Following trial, in which Plaintiff prevailed, the Court ordered US Airways to, inter alia, assign Plaintiff retroactive seniority to November, 1982.  See id.; Garland v. USAir, Inc., Civ. A. Nos. 86-890, 86-1943, 1991 WL 424045 (W.D. Pa. June 11, 1991).

[2]  US Airways' stated reason for terminating Plaintiff's employment is that he no longer had a valid pilot's license, which is required to operate US Airways' aircraft.  Plaintiff disputes this reason.

others with respect to the grievance and the arbitration proceeding.  Plaintiff also alleges, <u>inter alia</u>, that the ALPA Defendants conspired with Defendant US Airways and others to discriminate against him because of his race and age and to retaliate against him for prior discrimination complaints.

**B.  <u>Procedural History</u>**

Plaintiff's litigation history against US Airways and/or ALPA and the remaining Defendants, which I briefly summarize here, extends well beyond the instant lawsuit.  Shortly after US Airways hired Plaintiff, he filed a lawsuit against US Airways and ALPA in this court alleging racial discrimination in hiring and retaliation.  <u>See Garland v. USAir, Inc.</u>, 767 F. Supp. 715 (W.D. Pa. 1991).  Plaintiff, who was represented by counsel at the time, prevailed on his claims and was awarded damages and retroactive seniority.  US Airways also was enjoined from further discrimination in its hiring practices.  <u>See id.</u>; <u>Garland v. USAir, Inc.</u>, Civ. A. Nos. 86-890, 86-1943, 1991 WL 424045 (W.D. Pa. June 11, 1991).

On or about December 5, 2001, after his discharge from employment and while ALPA's grievance of that discharge was still proceeding, Garland filed a *pro se* "Civil Contempt Complaint for Damages and Bivens Action and Injunctive Relief" with this Court against US Airways, individual US Airways managers, and two FAA inspectors under the same docket number as his 1986 lawsuit.  (Civ. A. No. 86-890, Docket No. 61.)  In it, Garland alleged that his discharge as well as certain training failures were caused by race discrimination.

On December 2, 2002, Judge Ziegler entered an Order dismissing the FAA

inspectors as defendants without prejudice on the grounds that Garland had not served them properly and had improperly sought to reopen the 1986 action and add them as new parties without leave of court. (Id., Docket No. 79.) The Court also *sua sponte* dismissed the portion of the case relating to US Airways without prejudice. See id.

On March 19, 2003, after the System Board issued its award upholding Plaintiff's discharge, Garland filed a Motion for Reconsideration of Judge Ziegler's December 2, 2002 Order, in which he alleged, among other things, contempt of court by US Airways and that US Airways engaged in "fraud, corruption, collusion, perjury, obstruction of justice, conspiracy, and other tortious conduct in order to obtain the draft arbitration award." (Id., Docket No. 80.)  Judge Ziegler denied Plaintiff's Motion on March 21, 2003. (Id., Docket No. 81.)

On May 7, 2003, Garland filed a "Motion for Trial de Novo and Hearing Date," again under his 1986 case number, alleging violations of Title VII of the Civil Rights Act of 1964 and the Railway Labor Act. (Id., Docket No. 82.)  In that Motion, which added ALPA as a party, Garland requested that the Court vacate the arbitration decision upholding his termination and hear his contempt and civil rights complaints "de novo." See id. Judge Ziegler treated Garland's Motion as another Motion for Reconsideration of the December 2, 2002 Order and, on May 13, 2003, denied the Motion. (Id., Docket No. 83.)  On November 28, 2003, the Court of Appeals dismissed Garland's appeal of Judge Ziegler's orders because it was untimely. (Id., Docket No. 87.)

4

Finally, on January 5, 2004, Garland filed a voluminous "Motion to Vacate and Set Aside Order(s) upon Evidence of Fraud, Fraud upon the Court, Collusion and Corruption Pursuant to FRCP 60(b); Motion for Contempt Pursuant to 65(d); Motion to Add New Claims and New Parties Pursuant to FRCP 15 and FRCP 19; and Motion for Scheduling Order," once again under the same docket number as his 1986 case.  (Id., Docket No. 88.)  In addition to US Airways and ALPA, Garland named as Defendants in the caption a number of US Airways officers, employees, or attorneys; the two FAA inspectors; Defendant Johnson; the System Board; and the three non-dissenting members of the System Board.  On July 15, 2004, I denied this Motion, finding, inter alia, that Plaintiff could not reopen his 1986 discrimination in hiring case to add additional claims and parties.[3]

Plaintiff commenced this action on February 7, 2005 by filing an Application to Proceed in Forma Pauperis and attaching thereto a copy of his Complaint. (Docket No. 1).  I granted Plaintiff's Application to Proceed in Forma Pauperis on February 10, 2005, and Plaintiff's Complaint was deemed filed on that date.  (Docket No. 2).  Plaintiff never requested issuance of a summons and none was issued.   On June 29, 2005, I granted Plaintiff's Motion to Amend his Complaint.  (Docket No. 7). Plaintiff's First Amended Complaint named four new Defendants.  Again, there was no indication in the record that Plaintiff requested the issuance of a summons and none was issued.  Plaintiff did not file a waiver of service of summons or adequate

_____

[3]  Plaintiff also has unsuccessfully presented his claims of racial discrimination against US Airways to the Bankruptcy Court in each of US Airways two bankruptcy filings.  See In re US Airways, Inc., No. 04-13819-SSM, 2006 WL 1331338 (Bankr. E.D. Va. Mar. 6, 2006) (disallowing Plaintiff's claim), aff'd, 2006 WL 2992495 (E.D. Va. Oct. 16, 2006).

proof of service with respect to either his original or first Amended Complaint.

After over 120 days passed from when Plaintiff filed both his original and First Amended Complaints, the deputy clerk wrote to Plaintiff requesting that he file, by November 14, 2005, either proof of service or a written explanation of why service had not been made. In response, Plaintiff filed a Motion to Amend his Complaint a second time to add a new Defendant and new allegations of retaliatory conduct. (Docket No. 11).

I granted Plaintiff's Motion to Amend on or about November 28, 2005, and his 127-page, 17-count Second Amended Complaint was deemed filed as of that date. (Docket No. 13). The ALPA Defendants filed the instant Motion to Dismiss and Supporting Brief on May 26, 2006. (Docket Nos. 37, 38). Plaintiff opposes the ALPA Defendants' Motion. (Docket No. 49). The Motion is now ripe for my review.

## II.  <u>LEGAL ANALYSIS</u>

### A.  <u>Standard of Review</u>

In deciding a Motion to Dismiss, all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in the light most favorable to the plaintiff. <u>Colburn v. Upper Darby Twp.</u>, 838 F.2d 663, 666 (3d Cir. 1988). I may dismiss a complaint only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45 (1957). In ruling on a motion for failure to state a claim, I must look to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with

6

adequate notice to frame an answer." <u>Colburn</u>, 838 F.2d at 666. "The issue is not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." <u>Lake v. Arnold</u>, 112 F.3d 682, 688 (3d Cir. 1997).

When ruling upon a 12(b)(6) motion, district courts generally may consider only the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, documents relied upon in the complaint, and items appearing in the record of the case. <u>See</u> <u>Angstadt v. Midd-West Sch. Dist.</u>, 377 F.3d 338, 342 (3d Cir. 2004); <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1195 (3d Cir. 1993).

As a <u>pro se</u> litigant, Plaintiff is entitled to a "less stringent" interpretation of his pleadings than those applied to "formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Molina v. City of Lancaster</u>, 159 F. Supp. 2d 813, 818 (E.D. Pa. 2001). This leniency, however, "does not excuse a <u>pro se</u> plaintiff . . . from pleading the essential elements of his claim." <u>Morris v. First Union Nat'l Bank</u>, No. Civ. A. 01-1953, 2002 WL 47961, at *2 (E.D. Pa. Jan. 14, 2002).

**B.  Motion to Dismiss**

**1.  Service**

The ALPA Defendants' first argument in support of dismissal is that Plaintiff failed to timely serve his Second Amended Complaint. I disagree that dismissal is

appropriate on this basis.

As set forth in the Procedural History above, Plaintiff did not properly serve either his original or First Amended Complaint.  On November 28, 2005, I entered an Order (Docket No.12) allowing Plaintiff to amend his Complaint a second time and setting forth stringent requirements with respect to service.  Specifically, I allowed Plaintiff 120 days from the date of the order to serve his Second Amended Complaint on each Defendant named therein in the manner prescribed in Federal Rule of Civil Procedure 4.  I explained to Plaintiff the availability of service by the U.S. Marshals pursuant to Federal Rule of Civil Procedure 4(c)(2) and informed him that if he chose to have the U.S. Marshals effect service, that he must complete a summons and a Marshal's Form 285 providing the names and addresses of each Defendant and  return the completed forms to the Clerk's office  within  30 days, i.e., by December 28, 2005.  See Docket No. 12.  If Plaintiff timely completed and returned the appropriate paperwork, then the Clerk of Court was directed to issue summons and instruct the Marshals to serve the Second Amended Complaint in accordance with the Federal Rules of Civil Procedure.  Id.

The ALPA Defendants argue that the Second Amended Complaint should be dismissed against them because Plaintiff failed to serve them within 120 days of my November 28, 2005 Order and, thus, failed to comply with that Order.  Defs.' Br. at 7-8.  The ALPA Defendants note that ALPA and Defendant Woerth were served on May 10, 2006, and Defendant Johnson was served on May 15, 2006, well beyond the expiration of the 120-day period on March 29, 2006.   Id.

8

I agree that the ALPA Defendants were not served with the Second Amended Complaint within 120 days of its filing.  I disagree, however, that it is appropriate to dismiss Plaintiff's claims against the ALPA Defendants on this basis.  As my November 28, 2005 Order explained, "[i]f service of the Second Amended Complaint is not effected within 120 days of the date of this Order through any fault or inaction of Plaintiff, Plaintiff's action will be dismissed." Docket No. 12 at 8_(emphasis added); see also Wilson v. Vaughn, No. Civ. A. 93-6020, 1996 WL 528870, at *1 (E.D. Pa. Mar. 14, 1996) (If a "plaintiff provides adequate information to identify the party to be served, a complaint should not be dismissed under Rule 4(m) for the Marshals Service's failure to effectuate proper service.").

Here, the ALPA Defendants argue only that they were served outside of 120 days, not that Plaintiff failed to meet his 30-day deadline to supply the appropriate materials to the proper authorities.  They also do not contend that the information Plaintiff supplied to the Clerk and/or U.S. Marshals was inaccurate or incomplete. Further, Plaintiff represents in his response that he met his obligation to provide the Clerk of Court or U.S. Marshals with appropriate copies of the summons and Second Amended Complaint within 30 days of my November 28, 2005 Order, and, therefore, that the late service was not his fault or a result of his inaction.[4]  In light of Plaintiff's representations and the ALPA Defendants' lack of argument to the contrary, I decline to dismiss Plaintiff's Second Amended Complaint against the ALPA

---

[4]  The Form 285s the Plaintiff submitted with respect to the ALPA Defendants are dated December 27, 2005, one day prior to Plaintiff's 30-day deadline.  See Docket Nos. 41, 50, 90.

Defendants for untimely service.

## 2. **Failure to State a Claim**

### a. **State Law Claims**

As set forth above, Plaintiff's Second Amended Complaint contains seventeen counts.  Sixteen of those counts are asserted against the ALPA Defendants, including eight claims under state law:  intentional infliction of emotional distress (Count 7); negligent infliction of emotional distress (Count 8); libel/slander (Count 9); negligent supervision (Count 10); unjust enrichment (Count 14); tortious interference with prospective economic advantage (Count 15); breach of contract (Count 16); and legal malpractice (Count 17).[5]  The ALPA Defendants argue, however, that the substance of Plaintiff's allegations boils down to a claim that ALPA breached its duty of fair representation under the Railway Labor Act ("RLA"), 45 U.S.C. § 151, et seq.  With respect to Plaintiff's state-law claims, I agree.

The union's federal duty of fair representation arises from the obligations imposed on unions under the RLA.  Airline Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 76 (1991).  The statutory duty of fair representation requires the union to represent bargaining unit employees honestly and in good faith and without invidious discrimination or arbitrary conduct.  See Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570 (1976); O'Neill, 499 U.S. at 76.  A breach of the duty of fair representation

---

[5]  Although Plaintiff styles Count Three of his Second Amended Complaint as a claim for "wrongful termination," he alleges therein that Defendants US Airways and ALPA violated 42 U.S.C. § 2000e.  See 2d Am. Compl. ¶ 55.  Thus, it appears that Count Three is an extension of Plaintiff's Title VII claim against Defendants rather than an independent state law claim.  To the extent, however, Plaintiff intended to bring Count Three under state tort law, my discussion of Plaintiff's state-law claims applies equally thereto.

occurs when the union's conduct toward a member of the collective bargaining unit is "arbitrary, discriminatory, or in bad faith." <u>Vaca v. Sipes</u>, 386 U.S. 171, 190 (1967); <u>O'Neill</u>, 499 U.S. at 67.

Here, the ALPA Defendants cannot be liable to Plaintiff under any of his state-law theories because those purported causes of action are preempted and/or subsumed by his federal duty of fair representation ("DFR") claim.  <u>See Johnson v. United Food & Commercial Workers, Int'l Union Local No. 23</u>, 828 F.2d 961, 967 (3d Cir. 1987).   It is well-established that "state law claims of union misconduct are preempted where the conduct at issue is subject to the union's statutory duties as exclusive representative, because that relationship is governed solely by the federal duty of fair representation." <u>Arnold v. Air Midwest, Inc.</u>, No. 93-2426-JWL, 1994 WL 247442, at *6 (D. Kan. 1994) (collecting cases), <u>aff'd</u>, 100 F.3d 857 (10th Cir. 1996).  A plaintiff may not pursue state law claims simply to take advantage of remedies more liberal than those offered under the RLA.  <u>See id.</u>; <u>see also Johnson</u>, 828 F.2d at 967 ("[O]ne cannot avoid federal preemption of alleged state law claims by artfully phrasing the language in the complaint.").

In this case, all of Plaintiff's state law claims are related to ALPA's representational functions and obligations.  Indeed, Plaintiff's state law claims against the ALPA Defendants are essentially identical to his federal DFR claim. Because Plaintiff's state law claims are "inextricably intertwined and embodied in" Plaintiff's federal DFR claim, those claims are barred and must be dismissed.

Plaintiff's state claims against the individual defendants, Woerth and Johnson,

11

fail for the additional reason that only the union and not its officers and employees can be liable for a breach of the duty of fair representation.  See Atkinson v. Sinclair Refining Co., 370 U.S. 238, 249 (1962) (explaining that Congress intended for "the union as an entity" to be "the sole source of recovery for injury inflicted by it").  A plaintiff cannot circumvent this policy "by the simple device of suing union agents or members, whether in contract or in tort, or both, in a separate count or on a separate action for damages."  Id.; see also Montplaisir v. Leighton, 875 F.2d 1, 4 (1st Cir. 1989) ("With monotonous regularity, court after court has cited Atkinson to foreclose state-law claims, however inventively cloaked, against individuals acting as union representatives within the ambit of the collective bargaining process.  This principle has become so embedded in our jurisprudence that it brooks no serious challenge." (citations omitted)); Arnold v. Air Midwest, Inc., 100 F.3d 857, 861 (10th Cir. 1996).  This rule applies equally to union attorneys such as Defendant Johnson who perform  services as part of the collective bargaining process and precludes state-law malpractice claims against them.  See, e.g., Breda v. Scott, 1 F.3d 908, 908-09 (9th Cir. 1993); Arnold, 100 F.3d at 862-63.

For all of these reasons, Plaintiff's state-law claims against the ALPA Defendants fail as a matter of law, and must be dismissed.

**b.  Federal Claims**

Plaintiff's Second Amended Complaint also contains eight federal counts against the ALPA Defendants alleging: race discrimination and retaliation under Title VII (Counts 1 and 3); deprivation of constitutional rights under 42 U.S.C. § 1981 (Count

2); age discrimination under the Age Discrimination in Employment Act ("ADEA") (Count 5); conspiracy to deprive civil and equal rights under 42 U.S.C. § 1985(3) (Count 6); violation of the Railway Labor Act (Count 11); violation of ERISA (Count 12); and violation of RICO (Count 13).[6]

After a careful review of Plaintiff's Second Amended Complaint and the submissions of the parties, I find that Plaintiff also has failed to state a claim upon which relief can be granted under any of his purported "federal causes of action."

### 1. DFR Claim

As set forth above, Plaintiff's state-law claims against the ALPA Defendants fail because Plaintiff's proper avenue of relief is a DFR claim against ALPA under the RLA. The ALPA Defendants correctly argue, however, that Plaintiff's DFR claim is time-barred because Plaintiff did not bring that claim within the applicable limitations period under the RLA.  ALPA Defs.' Br. at 9-10.

It is well-established that "the statute of limitations for a duty of fair representation claim against a union under the RLA is six months." Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 304 (3d Cir. 2004); Sisco v. Consol. Rail Corp., 732 F.2d 1188, 1194 (3d Cir. 1984).  Where a union represents an employee in an arbitration proceeding, the employee's cause of action generally accrues when the arbitration board denies the employee's claim. See Bensel, 387 F.3d at 307; Whittle v. Local 641, 56 F.3d 487, 490 (3d Cir. 1995); Childs v. Pa. Fed'n Bhd. of Maint. Way Employees, 831

---

[6] Count Four of the Second Amended Complaint ("Bivens Action") is not asserted against the ALPA Defendants.

F.2d 429, 436 (3d Cir. 1987).

Here, the latest any DFR claim could have accrued was February 7, 2003, when the System Board issued its decision denying Plaintiff's grievance. Although the allegations in the Second Amended Complaint demonstrate that Plaintiff was aware of the System Board's decision, as well as the alleged acts and/or omissions giving rise to his claim against ALPA as of that date, Plaintiff did not file the instant action until February 2005 – well after the six-month statute of limitations expired. Because Plaintiff's DFR claims are untimely, they must be dismissed as a matter of law. See Johnson, 828 F.2d at 967.

Plaintiff's only relevant response to the ALPA Defendants' statute of limitations defense is that his claim is timely because he "filed his initial Complaint on or about December 5, 2001, and has since filed an Amended Complaint on November 29, 2005." Pl.'s Resp. (Docket No. 49) at 4. This argument is without merit. As set forth above, Plaintiff filed his original Complaint in this case on February 10, 2005 - over two years after the System Board issued its decision. See Docket No. 2. To the extent Plaintiff attempted to file a similar claim under another case number prior to this date, such filings are immaterial to the case at hand.[7]

---

[7]The only document of which I am aware dated on or about December 5, 2001 is the purported pro se "Civil Contempt Complaint for Damages and Bivens Action and Injunctive Relief" that Plaintiff filed in this Court under the same docket number as his then-closed 1986 lawsuit against US Airways. As set forth in Section I.B, supra, the Court refused Plaintiff's attempts to reopen his 1986 lawsuit to add additional claims and parties. The last Order issued in such regard in Case No. 86-890 was entered on July 15, 2004 - over six months prior to the date Plaintiff filed the instant lawsuit. Thus, Plaintiff's current duty of fair representation claims are untimely even if his December 2001 filings in the 1986 case were relevant to the timing issue, which they are not.

## 2.  Remaining Federal Counts

The ALPA Defendants argue that, as to them, Plaintiff's remaining federal claims are merely restatements of his federal DFR claim under different headings. For the most part, I agree.  As set forth above, Plaintiff cannot avoid dismissal of his DFR claim simply by repackaging that claim under the guise of a different cause of action.  Even if, however, Plaintiff's federal claims could co-exist with his DFR claim under other circumstances, those claims independently fail as a matter of law under the facts as alleged by Plaintiff in his complaint and, thus, must be dismissed.[8]

Plaintiff's Title VII and ADEA claims fail because, among other things, he failed to exhaust his administrative remedies with respect to those claims.  Under both Title VII and the ADEA, a plaintiff in Pennsylvania (a deferral state) must first file a charge of discrimination with the EEOC within 300 days of the date on which the allegedly unlawful employment practice occurred.  See 42 U.S.C. § 2000e-5(e) (Title VII); 29 U.S.C. § 626(d)(2) (ADEA).   Further, even if a plaintiff timely files an administrative charge, he cannot proceed with his claims in federal court unless he first receives a right-to-sue letter and files his claim within ninety days thereafter. 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e).

Here, Plaintiff does not allege anywhere in his Second Amended Complaint

---

[8]  I recognize that the ALPA Defendants did not specifically raise many of the below arguments in their brief, although they have moved generally to dismiss all of the federal claims under Rule 12(b)(6).  Under the *in forma pauperis* statute, however, I have the power to dismiss any claim in an *in forma pauperis* complaint which is frivolous, malicious, or fails to state a claim upon which relief can be granted.  See 28 U.S.C. § 1915(e)(2)(B).  I may dismiss such claims *sua sponte* even on the basis of a waivable defense such as statute of limitations.  See Bieregu v. Ashcroft, 259 F. Supp. 2d 342, 355 & n.11 (D.N.J. 2003).

that he filed a timely charge of discrimination with respect to his ADEA or Title VII claims.  Rather, he refers only to charges of race discrimination and retaliation he filed previous to his 1986 discriminatory hiring case.  See 2d Am. Compl. ¶ 37.[9] Because Plaintiff has not alleged that he filed a timely charge of age or race discrimination or retaliation with respect to his current allegations (and not those that were the subject of the 1986 litigation) and/or that he received a right-to-sue letter and timely filed his claims thereafter, his ADEA and Title VII claims fail as a matter of law and must be dismissed.

Similarly, Plaintiff's § 1981 and § 1985(3) claims are untimely and must be dismissed.  The statute of limitations for § 1981 or § 1985(3) claims brought by an individual against his or her union is two years.  See Boyer v. Johnson Matthey, Inc., No. Civ. A. 02-CV-8382, 2005 WL 35893, at *3 (E.D. Pa. Jan. 6, 2005) (two-year statute of limitations applies to § 1981 claims against the union); Chatterjee v. Sch. Dist. Of Philadelphia, 170 F. Supp. 2d 509, 520 (E.D. Pa. 2001) (§ 1985(3)). Here, it is plain from the Second Amended Complaint that all of Plaintiff's allegations involving the ALPA Defendants took place between the mid-1980s and July 2002 (the date of Plaintiff's arbitration hearing).[10]  Not only were many of these allegations previously litigated

---

[9]  Plaintiff does not allege that he ever filed an administrative claim with respect to age discrimination.  See 2d Am. Compl. Count 5.

[10]  The bulk of Plaintiff's § 1985(3) claim consists of allegations that US Airways' counsel of record, Sarah Bean [sic], as part of a conspiracy against him, "willfully and deliberately misinformed Plaintiff that a Bankruptcy Court hearing scheduled for October 20, 2005 had been continued until December 15, 2005."  See 2d Am. Compl. ¶¶ 83-89.  Even if scheduling matters in the US Airways bankruptcy were relevant to the ALPA Defendants, which they are not, these allegations fail to state a claim against the ALPA Defendants.  As an initial matter, Attorney Bean [sic] was acting on behalf of US Airways, and not the ALPA Defendants.  Moreover, Plaintiff's own allegations show that the hearing on the objection at issue was indeed continued until December 15, 2005.  See id. ¶ 86.

in Plaintiff's 1986 lawsuit, but all of these events occurred far more than two years prior to February 2005, when Plaintiff filed this action. Where, as here, a statute of limitations violation is apparent on the face of the complaint, dismissal is appropriate. See Oshiver, 38 F.3d at 1384 n.1.[11]

Finally, Plaintiff does not make any argument whatsoever in his response as to why his ERISA and RICO claims should survive the motion to dismiss. Further, after reviewing Plaintiff's Second Amended Complaint, I agree that Plaintiff fails to allege any actions on the part of the ALPA Defendants that would support an ERISA or RICO claim. Plaintiff's generic and conclusory statements that the ALPA defendants acted unlawfully are simply insufficient to state a claim against them. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 & n.8 (3d Cir. 1997) (a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss).

Plaintiff's ERISA claim also fails because Plaintiff does not allege that he exhausted his administrative remedies with respect to that claim. Plaintiff's ERISA claim, which contends that the ALPA Defendants conspired with Defendants US Airways and Pension Benefit Guaranty Corporation ("PBGC") to deny Plaintiff his proper pension benefits, is governed by 29 U.S.C. § 1303. PBGC regulations, however,

_____

Thus, Ms. Bean's [sic] alleged representations did not deprive Plaintiff of his right to be heard on this issue. See also In re US Airways, Inc., 2006 WL 1331338, at **5-6 (Bankr. E.D. Va. Mar. 6, 2006), aff'd, 2006 WL 2992495 (E.D. Va. Oct. 13, 2006).

[11] Plaintiff's § 1985(3) claim is also deficient because, inter alia, it does not implicate a constitutional right that has been violated. See Brown v. Philip Morris Inc., 250 F.3d 789, 805-06 (3d Cir. 2001).

provide an administrative process and procedures that an individual must pursue prior to filing suit.  <u>See</u> 29 C.F.R. §§ 4003.7, .21, .51.  Plaintiff does not allege that he pursued these administrative remedies prior to filing suit.  Accordingly, his ERISA claim must be dismissed.  <u>See id.</u>.

The crux of Plaintiff's RICO claim against the ALPA Defendants is that they failed to commence a suit in federal court on his behalf against US Airways, and that they failed to exercise reasonable care, skill, and diligence in representing him.  2d Am. Compl. ¶¶ 165-170.  Such allegations clearly fail to establish a pattern of racketeering or a continuous scheme of criminal activity necessary to sustain a RICO claim, and I can not envision any set of facts under which Plaintiff could establish such a claim in this case.  <u>See</u> 18 U.S.C. § 1964(c); § 1962 (requiring a "pattern of racketeering activity"); <u>see also id.</u> § 1961(1) (defining "racketeering activity").

For all of these reasons, none of Plaintiff's federal claims against the ALPA Defendants can survive the instant Motion, and must be dismissed.

### 3.  Leave to Amend

I further find that additional amendment of Plaintiff's Complaint would not cure the deficiencies outlined above.  Because no amendment could render Plaintiff's claims against the ALPA Defendants meritorious, the Second Amended Complaint is dismissed without leave to amend a third time. <u>See</u> <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 111 (3d Cir. 2002) ("[P]laintiffs whose complaints fail to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile."); <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000) (grounds

that can justify denial of leave to amend include undue delay, bad faith, dilatory motive, prejudice, and futility).

Even if Plaintiff could correct the deficiencies in his pleading, concerns of undue delay and prejudice prevent me from allowing further amendment at this juncture.  See id.  This is at least the third time Plaintiff has filed these or similar claims in federal court since his discharge in 2001.  See supra Section 1.B.  In addition, Plaintiff already has amended the instant  Complaint two times, no discovery has been taken, and the case is almost two years old (due primarily to Plaintiff's initial inaction and service deficiencies).   Further, Plaintiff's prolific and repeated filings not only have cost Defendants  considerable  time and expense, but now Defendants are in the position of having to defend a  case  based primarily on events that happened five or more years ago.  For all of these reasons, further leave to amend is denied.  See Oran v. Stafford, 34 F. Supp. 2d 906, 913-14 (D.N.J. 1999), aff'd, 226 F.3d 275 (3d Cir. 2000).

### III. CONCLUSION

In short, even taking the allegations in Plaintiff's Second Amended Complaint as true and taking into account his *pro se* status, I find that Plaintiff has failed to state a claim upon which relief can be granted against the ALPA Defendants. Accordingly, the ALPA Defendants' Motion to Dismiss is granted, without leave to amend.

THEREFORE, this **12th** day of December, 2006, after careful consideration of the parties' submissions and for the reasons set forth in the Opinion accompanying

this Order, it is ORDERED that Defendants Air Line Pilots Association, Int'l, Duane E. Woerth and James W. Johnson's Rule 12(b)(6) Motion to Dismiss (Docket No. 37) is GRANTED and that all claims against Defendants Air Line Pilots Association, Int'l, Duane E. Woerth and James W. Johnson set forth in Plaintiff's Second Amended Complaint are dismissed.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge