IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PHILIP A. GARLAND,                                    )
                                                      )
                    Plaintiff,                        )
                                                      )
        -vs-                                          )
                                                       Civil Action No.  05-140
                                                      )
US AIRWAYS, INC., et al.,                             )
                                                      )
                    Defendants.                       )

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

On or about November 28, 2005, pro se Plaintiff Philip A. Garland ("Plaintiff" or "Garland") filed, with leave of court, a 17-count second amended complaint in the above-captioned action against 24 defendants including Defendants Pension Benefit Guaranty Corporation ("PBGC") and Bradley D. Belt ("Belt") (collectively, "PBGC Defendants"). See Docket No. 13.  Pending is the PBGC Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6). (Docket No. 72).  After a careful review of the submissions by the parties, and for the reasons discussed in this Opinion, the Motion to Dismiss is granted.

## I.  BACKGROUND

### A.  Factual Background

Unless otherwise noted, the facts in this section are taken from Plaintiff's Second Amended Complaint.

Plaintiff was employed by Defendant US Airways as a pilot from 1982 until the

termination of that employment on or about April 27, 2001.[1]  At all pertinent times, Plaintiff was a dues-paying member of the Air Line Pilots Association ("ALPA"), the collective bargaining representative for airline pilots, including Plaintiff.

PBGC is a wholly-owned United States government corporation that administers the defined benefit pension plan termination insurance program established by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1301-1461.  See 29 U.S.C. § 1302; Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 362 n.1 (1980).  Sponsors of such plans pay premiums to the PBGC, and the Corporation acts as a statutory guarantor, paying benefits to participants of underfunded terminated plans subject to statutory limits. See id. §§ 1307, 1322.

On August 11, 2002, US Airways filed a voluntary petition in the Bankruptcy Court for the Eastern District of Virginia, seeking reorganization relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101, et seq.  See In re U.S. Airways Group, Inc., 296 B.R. 734, 737 (Bankr. E.D. Va. 2003).  On January 30, 2003, US Airways filed with the PBGC a notice of its intent to terminate its Pilots' Retirement Income Plan, a defined-benefit pension plan, citing "a serious funding shortfall."  Id. at 738.  US Airways simultaneously filed a motion in the bankruptcy court for the judicial findings required by ERISA to permit a distress termination of the Plan. See 29 U.S.C.

---

[1]  US Airways originally hired Plaintiff in 1984.  In 1986, Plaintiff sued US Airways alleging racial discrimination in US Airways' hiring and recruitment practices.  See Garland v. US Air, Inc., 767 F. Supp. 715 (W.D. Pa. 1991).  Following trial, in which Plaintiff prevailed, the Court ordered US Airways to, inter alia, assign Plaintiff retroactive seniority to November, 1982.  See id.; Garland v. USAir, Inc., Civ. A. Nos. 86-890, 86-1943, 1991 WL 424045 (W.D. Pa. June 11, 1991).

§ 1341(c)(2)(B)(ii)(IV).  The bankruptcy court granted the motion.  In re U.S. Airways

Group, Inc., No. 02-83984, Order at 1 (Bankr. E.D. Va. Mar. 2, 2003) (citing 29 U.S.C. § 1341(c)(2)(B)(ii)(IV)).

PBGC applied to serve as successor trustee of the US Airways Plan, and its

application was granted.  See 29 U.S.C. § 1342(b). PBGC and US Airways entered into

an agreement setting March 31, 2003 as the plan's termination date.  Defendant Belt

was the Executive Director of PBGC at all times relevant to the allegations set forth

in the Second Amended Complaint.  See 2d Am. Compl. ¶ 32.[2]

In Count 12 of the Second Amended Complaint, Plaintiff alleges that the PBGC

Defendants:

> "took and commingled private and personal pension
> benefits due Plaintiff Garland on April 27, 2001, and by
> gratuitous transfer, into a common government salvage
> fund" (2d Am. Compl. ¶ 147);
>
> conspired with Defendants US Airways and ALPA and
> "refused to pay to Plaintiff Garland his earned pension
> benefits or to make good on any prior offer of settlement
> to Plaintiff Garland, any reasonable pension and/or
> severance pay" Id. ¶ 149;
>
> "would refuse Plaintiff Garland his full and complete
> pension benefit, without reduction or for penalty to
> withdraw such funds, until the unlawful, arbitration [sic]
> and capricious age 60 rule" Id.;
>
> "by paying all terminating employees other than Plaintiff
> Garland in one lump sum, . . . discriminated against
> Plaintiff Garland in violation of the specific terms of the

---

[2]  According to the PBGC Defendants, Defendant Belt since resigned as PBGC's Executive Director.  PBGC Defs.' Br. (Docket No. 74) at 3 n.8.

plan, and Federal law; and have not administered the plan in accordance with a uniform and nondiscriminatory policy" Id. ¶ 152; and

"acted to conspire to discriminate against Plaintiff Garland in a malicious manner; with intent to hurt Plaintiff Garland; and for the sole reason to deny him his pension benefit because Plaintiff Garland had complained to the EEOC, the NTSB, and the District Court" Id. ¶ 153.

## B. **Procedural History**

Plaintiff commenced this action on February 7, 2005 by filing an Application to Proceed *in Forma Pauperis* and attaching thereto a copy of his Complaint. (Docket No. 1).  I granted Plaintiff's Application to Proceed *in Forma Pauperis* on February 10, 2005, and Plaintiff's Complaint was deemed filed on that date.  (Docket No. 2).  Plaintiff never requested issuance of a summons and none was issued.   On June 29, 2005, I granted Plaintiff's Motion to Amend his Complaint.  (Docket No. 7). Plaintiff's First Amended Complaint named four new defendants.  Again, there was no indication in the record that Plaintiff requested the issuance of a summons and none was issued.  Plaintiff did not file a waiver of service of summons or adequate proof of service with respect to either his original or first amended Complaint.

After over 120 days passed from when Plaintiff filed both his original and first amended Complaints, my deputy clerk wrote to Plaintiff requesting that he file, by November 14, 2005, either proof of service or a written explanation of why service had not been made.  In response, Plaintiff filed a Motion to amend his Complaint a second time to add a new defendant and new allegations of retaliatory conduct. (Docket No. 11).

4

I granted Plaintiff's Motion to Amend on or about November 28, 2005, and his 17-count second amended complaint was deemed filed as of that date.  (Docket No. 13).   The PBGC Defendants filed the instant motion to dismiss and supporting materials on June 30, 2006.  (Docket No. 72).  Plaintiff opposes the PBGC Defendants' Motion.  (Docket No. 85).  The Motion is now ripe for my review.

## II.   LEGAL ANALYSIS

### A.  Standard of Review

In deciding a Motion to Dismiss, all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in the light most favorable to the plaintiff.  Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988).  I may dismiss a complaint only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45 (1957).  In ruling on a motion for failure to state a claim, I must look to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer."  Colburn, 838 F.2d at 666.  "The issue is not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  Lake v. Arnold, 112 F.3d 682, 688 (3d Cir. 1997).

When ruling upon a 12(b)(6) motion, district courts generally may consider only the allegations contained in the complaint, exhibits attached to the complaint,

matters of public record, documents relied upon in the complaint, and items appearing in the record of the case.  See Angstadt v. Midd-West Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1195 (3d Cir. 1993).

As a pro se litigant, Plaintiff is entitled to a "less stringent" interpretation of his pleadings than those applied to "formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972); Molina v. City of Lancaster, 159 F. Supp. 2d 813, 818 (E.D. Pa. 2001).  This leniency, however, "does not excuse a pro se plaintiff . . . from pleading the essential elements of his claim."  Morris v. First Union Nat'l Bank, No. Civ. A. 01-1953, 2002 WL 47961, at *2 (E.D. Pa. Jan. 14, 2002).

**B.  Motion to Dismiss**

   **1.  Service of Process**

The PBGC Defendants challenge the sufficiency of service of process against both PBGC and Defendant Belt.  I will address each defendant in turn.

   **a.  Defendant PBGC**

In federal court, service of process upon federal government corporations such as PBGC is governed by Rule 4(i) of the Federal Rules of Civil Procedure.  Rule 4(i) provides that:

   (1) Service upon the United States shall be effected

      (A) by delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought or to an assistant United States attorney or clerical employee designated by the United

6

States attorney in a writing filed with the clerk of the court or by sending a copy of the summons and of the complaint by registered or certified mail addressed to the civil process clerk at the office of the United States attorney and

(B) by also sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States at Washington, District of Columbia, and

(C) in any action attacking the validity of an order of an officer or agency of the United States not made a party, by also sending a copy of the summons and of the complaint by registered or certified mail to the officer or agency.

*2)(A) Service on an agency or corporation of the United States, or an officer or employee of the United States sued only in an official capacity, is effected by serving the United States in the manner prescribed by Rule 4(i)(1) **and** by also sending a copy of the summons and complaint by registered or certified mail to the officer, employee, agency, or corporation.*

*(B) Service on an officer or employee of the United States sued in an individual capacity for acts or omissions occurring in connection with the performance of duties on behalf of the United States--whether or not the officer or employee is sued also in an official capacity--is effected by serving the United States in the manner prescribed by Rule 4(i)(1) **and** by serving the officer or employee in the manner prescribed by Rule 4 (e), (f), or (g).*

>     (3) The court shall allow a reasonable time to serve process under
> Rule 4(i) for the purpose of curing the failure to serve:

> > (A) all persons required to be served in an action
> > governed by Rule 4(i)(2)(A), if the plaintiff has served
> > either the United States attorney or the Attorney
> > General of the United States, or

> > (B) the United States in an action governed by Rule
> > 4(i)(2)(B), if the plaintiff has served an officer or
> > employee of the United States sued in an individual
> > capacity.

Fed. R. Civ. P. 4(i) (emphasis added).  Plaintiff bears the burden of proof regarding
the validity of service. See Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,
988 F.2d 476, 488 (3d Cir. 1993).

As set forth in the Procedural History above, Plaintiff did not properly serve
either his original or first amended complaint.  On November 28, 2005, I entered an
Order (Docket No.12) allowing Plaintiff to amend his complaint a second time and
setting forth stringent requirements with respect to service.  Specifically, I allowed
Plaintiff 120 days from the date of the order to serve his Second Amended
Complaint on each Defendant named therein in the manner prescribed in Federal
Rule of Civil Procedure 4.  I explained to Plaintiff the availability of service by the U.S.
Marshals pursuant to Federal Rule of Civil Procedure 4(c)(2) and informed him that
if he chose to have the U.S. Marshals effect service, that he must complete a
summons and a Marshal's Form 285 providing the names and addresses of each
defendant and return the completed forms to the Clerk's office within 30 days, i.e.,

8

by December 28, 2005.  See Docket No. 12.  If Plaintiff timely completed and returned the appropriate paperwork, then the Clerk of Court was directed to issue summons and instruct the Marshals to serve the Second Amended Complaint in accordance with the Federal Rules of Civil Procedure.  Id.

The PBGC defendants argue that the Second Amended Complaint should be dismissed against PBGC because Plaintiff failed to properly serve PBGC within 120 days of my November 28, 2005 Order and, thus, failed to comply with that Order. Defs.' Br. at 9-10.  In particular, the PBGC Defendants note that the process request receipt on record provided the following address for purposes of service:

> Pension Benefit Guaranty Corp.
> c/o Alberto Gonzalez, Ofc. of the AGA,
> 1350 Pennsylvania Ave., NE, #409
> Washington, DC 20004

See Docket No. 32.  There is no indication, however, that Plaintiff sent, or directed that a copy of the summons and complaint be sent, to PBGC at its proper address or to the United States Attorney for the Western District of Pennsylvania or her designee by registered or certified mail as required by the Rule.  See Fed. R. Civ. P. 4(i)(1)(A)(1), (2)(A).

I agree with the PBGC Defendants that Plaintiff's error in this regard is inexcusable and warrants dismissal of the Second Amended Complaint against PBGC. Although Plaintiff correctly points out that my November 28, 2005 Order required dismissal only where Plaintiff's own fault or inaction caused a failure to serve, this is exactly such a case.  Here, Plaintiff supplied the incorrect address to the U.S.

Marshal[3] and also failed to check the box on his form that service was to be made to the United States or otherwise to alert the Marshals' Service to effectuate service in accordance with Rule 4(i)(2)(A).  Because Plaintiff failed to comply with my November 28, 2005 Order and the applicable rules of civil procedure regarding service, his complaint against PBGC must be dismissed.

### b. <u>Defendant Belt</u>

In his response in opposition, Plaintiff appears to admit that he has not properly served Defendant Belt because he believes that Defendant Belt has resigned as director of PBGC and "his whereabouts are unknown to Plaintiff Garland at this time."  Pl.'s Opp. at 8.  It was Plaintiff's responsibility to obtain and provide appropriate information regarding Defendant Belt's whereabouts to the U.S. Marshal for purposes of service.  Plaintiff's failure to do so requires dismissal of his Second Amended Complaint against Defendant Belt as well.

### 2. <u>ERISA Claim</u>

Even if service were proper on the PBGC Defendants, Plaintiff's ERISA claim fails against them on multiple jurisdictional grounds, including improper venue and failure to exhaust administrative remedies.

### a. <u>Improper Venue</u>

The PBGC Defendants argue that the ERISA claim against them must fail for lack of jurisdiction because Plaintiff brought this claim in the wrong court.  I agree.

---

[3] As the PBGC Defendants point out, Plaintiff was aware of the correct address because he provided it on the summons served on Defendant Belt.  <u>See</u> Docket No. 91; Docket No. 72, Ex. C.

Plaintiff's ERISA claim, which alleges that the PBGC Defendants conspired with US Airways and the union to deny Plaintiff his proper pension benefits, is governed by 29 U.S.C. § 1303.  29 U.S.C § 1303 provides the "exclusive means for bringing actions against [PBGC]" for participants or beneficiaries who are adversely affected by any action of PBGC.  29 U.S.C. § 1303(f)(1),(4); see also Koken v. PBGC, 383 F. Supp. 2d 712, 716-17 (E.D. Pa. 2005).  In particular, 29 U.S.C. § 1303(f)(1) provides that an aggrieved participant or beneficiary may bring an action against PBGC "for appropriate equitable relief in the appropriate court."  (emphasis added).  The statute goes on to define "appropriate court" as:

> (A) the United States district court before which proceedings under [29 U.S.C. § 1341 or 29 U.S.C. § 1342] of this title are being conducted,

> (B) if no such proceedings are being conducted, the United States district court for the judicial district in which the plan has its principal office, or

> (C) the United States District Court for the District of Columbia.

29 U.S.C.A. § 1303(f)(2).

None of these definitions of "appropriate court" apply here.  The proceedings under 29 U.S.C. § 1341 (governing termination of single-employer plans) took place in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division, at Case No. 04-13819; Plaintiff does not argue that the plan has its principal office in this district; and, obviously, this is not the district court for the District of

Columbia.  Because this is not an "appropriate court" for Plaintiff's ERISA action against the PBGC Defendants within the meaning of Section 1303, I agree that this claim is defective on both jurisdiction and venue grounds.

Plaintiff's only reply to the PBGC Defendants' venue challenge is that venue is somehow proper here because the bankruptcy court in Virginia issued an order on April 18, 2003 that Plaintiff's claim against US Airways be "liquidated" in this Court. This argument is incoherent and non-responsive.  This is not a termination proceeding within the meaning of 29 U.S.C. § 1341 nor is there any record that any such termination proceedings took place or are taking place here.  Because this is not an appropriate court within the meaning of ERISA, Plaintiff's claim against these defendants must fail.

**b. <u>Failure to Exhaust Administrative Remedies</u>**

Even if venue were proper, Plaintiff's ERISA claim also fails because he does not allege that he exhausted his administrative remedies with respect to that claim. As set forth above, Plaintiff's ERISA claim is governed by 29 U.S.C. § 1303.  PBGC regulations, however, provide an administrative process and procedures that an individual must pursue prior to filing suit under this section.  <u>See</u> 29 C.F.R. §§ 4003.7, .21, .51.  Among other things, the regulations require that the PBGC issue an "initial determination" of a participant's benefits containing notice of the right to request review of the determination.  <u>Id</u>. § 4003.21.  Any person aggrieved by the initial determination may appeal to the PBGC Appeals Board.  <u>Id</u>. § 4003.51; <u>see also</u> <u>id</u>. §§ 4003.33, 22(a).  The decision of the Appeals Board is considered "the final

agency action" by PBGC regarding the determination.  Id. § 4003.59(b).  The regulations specifically provide that "a person aggrieved by an initial determination . . . has not exhausted his or her administrative remedies until he or she has filed" a request for review.  Id. § 4003.7.[4]

Here, Plaintiff does not allege that he pursued any of these administrative remedies prior to filing suit.  Indeed, Plaintiff acknowledges in his response that PBGC has not even issued its initial determination of his benefits in accordance with 29 C.F.R. § 4003.21.  I simply cannot adjudicate issues such as whether the PBGC Defendants impermissibly refused to pay Plaintiff pension benefits or otherwise discriminated against him with respect to paying benefits where PBGC has not even made its decision as to what benefits, if any, Plaintiff is due.  For this reason as well, Plaintiff's ERISA claim is premature and must be dismissed.  See, e.g., Boivin v. US Airways, Inc., 446 F.3d 148, 154-55 (D.C. Cir. 2006) ("It would make little sense . . . to establish an elaborate process for appealing determinations (and requiring exhaustion of such appeals) once the Corporation reaches a formal conclusion, but to allow plan participants to pretermit that process by going to court before that

_____

[4]  Although ERISA does not expressly require exhaustion of administrative remedies, the courts have long "acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts."  McCarthy v. Madigan, 503 U.S. 140, 144-45 (1992); see also  Boivin v. US Airways, Inc., 446 F.3d 148, 154-55 (D.C. Cir. 2006) (requiring exhaustion in retired US Airways' pilots' suit against the PBGC, noting, inter alia, that exhaustion would promote judicial efficiency and protect agency authority).  I agree that Plaintiff must await his initial determination and challenge that determination through the appropriate agency procedures before seeking redress in federal court.  See id.

stage is even reached.").[5]

### 3. Remaining Counts

Although, with two exceptions, the remaining counts in Plaintiff's Second Amended Complaint purport to be against "each and every defendant,"[6] I find that none of these counts states a claim against the PBGC Defendants.  Except for Count 13 ("Federal Civil RICO"), none of the remaining counts mention any of the PBGC Defendants, let alone state how or why Plaintiff is entitled to relief against them.  See Fed. R. Civ. P. 8(a) (setting forth notice pleading requirements).  Rather, the bulk of Plaintiff's allegations focus on the conduct of Defendant US Airways and, to a lesser extent, Defendant ALPA, in connection with the alleged discriminatory termination of his US Airways' employment and subsequent grievance and arbitration proceedings related thereto.[7]  Simply including the PBGC Defendants in the captions of each count or making generic and conclusory statements that these

---

[5]  Plaintiff argues in his response in opposition that no exhaustion requirement should apply because PBGC has not issued a formal determination within a reasonable time and, therefore, he is entitled to bring suit under the Administrative Procedures Act to compel agency action.  See Pl.'s Opp. at 4.  I disagree.  First, this is not a claim under the Administrative Procedure Act to compel agency action.  Rather, Plaintiff is attempting to bypass the administrative process altogether.  Second, even if the exhaustion requirement could be excused where prejudice results from unreasonable delay, I find that matters have not yet reached that point under the facts as alleged in Plaintiff's Complaint.  See Boivin, 446 F.3d at 158.

[6]  Count 4 of the Second Amended Complaint, entitled "Bivens Action," is asserted against Rick Davies, Harold Simpson, and Edward Krinsky only.  Count 17, "Legal Malpractice," is asserted only against any "attorney defendants."

[7]  Counts 1-3, 5-11, and 13-16 of the Second Amended Complaint include claims for: race discrimination and retaliation under Title VII; deprivation of constitutional rights under 42 U.S.C. § 1981; wrongful termination; age discrimination; conspiracy to deprive civil and equal rights under 42 U.S.C. § 1985(3); intentional infliction of emotional distress; negligent infliction of emotional distress; libel/slander; negligent supervision; violation of the Railway Labor Act; violation of RICO; unjust enrichment; tortious interference with prospective economic advantage; and breach of contract.

defendants acted unlawfully is insufficient to state a claim against them.  See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 & n.8 (3d Cir. 1997) (a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss).

Although the RICO claim (Count 13) identifies the PBGC Defendants by name in its opening paragraphs, see 2d Am. Compl. ¶¶ 160-161, it too fails to allege any actions on the part of the PBGC Defendants that would support a RICO claim against them.  Moreover, as a wholly-owned government corporation and agency of the United States, PBGC is not a "person" within the meaning of RICO and, therefore, cannot be liable for civil RICO damages.  See, e.g., Wolf v. U.S., 127 F. App'x 499, 500-01 (Fed. Cir. 2005); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 404-05 (9th Cir. 1991).  Indeed, Plaintiff concedes in his opposition that he "may be unable to sustain a RICO claim against [the] PBGC Defendants at this time."  Opp. Br. (Docket No. 85) at 15, ¶ 25.

Because Plaintiff has failed to state a claim against the PBGC Defendants upon which relief can be granted in Counts 1-3, 5-11, and 13-16 of the Second Amended Complaint, those counts must be dismissed against the PBGC  Defendants.

## C.  Leave to Amend

I further find that additional amendment of Plaintiff's complaint would not cure the deficiencies outlined above.  Because no amendment could render Plaintiff's claims against the PBGC Defendants meritorious, the Second Amended Complaint is dismissed against them without leave to amend a third time.  See

<u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 111 (3d Cir. 2002) ("[P]laintiffs whose complaints fail to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile."); <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000) (grounds that can justify denial of leave to amend include undue delay, bad faith, dilatory motive, prejudice, and futility).

Even if Plaintiff could correct the deficiencies in his pleading, concerns of undue delay and prejudice prevent me from allowing further amendment at this juncture.  <u>See id.</u>  Plaintiff already has amended the instant complaint two times, no discovery has been taken, and the case is almost two years old (due primarily to Plaintiff's initial inaction and service deficiencies).  For these reasons as well, further leave to amend is denied.  <u>See</u> <u>Oran v. Stafford</u>, 34 F. Supp. 2d 906, 913-14 (D.N.J. 1999), <u>aff'd</u>, 226 F.3d 275 (3d Cir. 2000).

### III.  <u>CONCLUSION</u>

In short, even taking into account Plaintiff's <u>pro se</u> status and construing his pleadings liberally, his claims fail due to improper service, lack of jurisdiction, improper venue and/or because he has not alleged any set of facts against the PBGC Defendants upon which relief could be granted.  For this and all of the reasons set forth above, the PBGC Defendants' Motion to Dismiss is granted, without leave to amend.

THEREFORE, this **21st** day of December, 2006, after careful consideration of the parties' submissions and for the reasons set forth in the Opinion accompanying this Order, it is ORDERED that the Motion to Dismiss of Defendants Pension Benefit

Guaranty Corporation and Bradley D. Belt (Docket No. 72) is GRANTED and that all claims against Defendants Pension Benefit Guaranty Corporation and Bradley D. Belt set forth in Plaintiff's Second Amended Complaint are dismissed.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge