IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILLIP A. GARLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 05-140 |
| | ) |
| US AIRWAYS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

On or about November 28, 2005, pro se Plaintiff Philip A. Garland ("Plaintiff" or "Garland") filed, with leave of court, a 17-count Second Amended Complaint in the above-captioned action against 24 defendants including Defendants Rick Davies and Harold Simpson (collectively, "Federal Defendants"), arising out of the termination of Plaintiff's employment as a pilot for US Airways. See Docket No. 13. Pending is the Federal Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docket No. 67). After a careful review of the submissions by the parties, and for the reasons discussed in this Opinion, the Motion to Dismiss is granted.[1]

---

[1] I recognize that Plaintiff has filed notices of appeal with respect to three of my prior orders granting Motions to Dismiss filed by other parties. See Docket Nos. 110, 113, 118. Although a notice of appeal ordinarily divests the district court of jurisdiction, a premature notice of appeal does not have the same effect. Rather, the "district court 'should continue to exercise [its] jurisdiction when faced with clearly premature notices of appeal.'" Martinez v. Quality Value

1

## I. BACKGROUND

### A. Factual Background

Unless otherwise noted, the facts in this section are taken from Plaintiff's Second Amended Complaint.

Plaintiff was employed by Defendant US Airways as a pilot from 1982 until the termination of that employment on or about April 27, 2001.[2] At all pertinent times, Plaintiff was a dues-paying member of the Air Line Pilots Association ("ALPA"), the collective bargaining representative for airline pilots, including Plaintiff. ALPA filed a grievance on behalf of Plaintiff under the collective bargaining agreement ("CBA"), challenging the termination of Plaintiff's employment. Defendant US Airways Pilot's System Board of Adjustment ("System Board"), a five-member federal labor arbitration board, held an evidentiary hearing on Plaintiff's grievance on or about July 17, 2002. On February 7, 2003, the System Board issued a final opinion and award finding that US Airways was justified, pursuant to the CBA, in its decision to terminate Plaintiff's employment.

At the time of most of the incidents alleged in the Second Amended Complaint, the Federal Defendants were employees of the Federal Aviation

---

Convenience, Inc., 63 F. Supp. 2d 651, 653, n.1 (E.D. Pa. 1999) (quoting Mondrow v. Fountain House, 867 F.2d 798, 800 (3d Cir. 1989)), aff'd, 216 F.3d 1076 (3d Cir. 2000). Here, Plaintiff filed his notices of appeal without my having issued a final order in the case and, thus, the notices are "clearly premature." Fed. R. Civ. P. 54(b). Accordingly, I maintain jurisdiction over this action. See Martinez, 63 F. Supp. 2d at 653 n.1.

[2] US Airways originally hired Plaintiff in 1984. In 1986, Plaintiff sued US Airways alleging racial discrimination in US Airways' hiring and recruitment practices. See Garland v. US Air, Inc., 767 F. Supp. 715 (W.D. Pa. 1991). Following trial, in which Plaintiff prevailed, the Court ordered US Airways to, inter alia, assign Plaintiff retroactive seniority to November, 1982. See id.; Garland v. USAir, Inc., Civ. A. Nos. 86-890, 86-1943, 1991 WL 424045 (W.D. Pa. June 11, 1991).

Administration ("FAA").[3]  Plaintiff contends, among other things, that the Federal Defendants conspired with US Airways, ALPA, and the other defendants to discriminate against Plaintiff on the basis of his race and age, and engaged in actions to ensure that he failed certain proficiency examinations that he needed to pass in order to maintain his Airline Transport Pilot ("ATP") Certification, without which he could no longer fly commercial airplanes.

The portions of the Second Amended Complaint that recite specific facts regarding the Federal Defendants allege as follows:

> that on November 14, 2000, Defendant Simpson observed a proficiency reexamination of Plaintiff by US Air employees and that Defendants Davies and Simpson would always exercise their option to observe a recheck "to aid, facilitate and help out" US Airways management against Plaintiff. (2d Am. Compl. ¶ 42 (iii));
>
> that, after observing Plaintiff on a "709 ride" on another occasion, Defendant Simpson issued Plaintiff an unsatisfactory evaluation report because, according to Simpson, of Plaintiff's flight management computer performance. Id. ¶ 42 (dddd)-(ffff);
>
> that, on March 5, 2001, Plaintiff took a second "709 ride," this time with Defendant Davies observing for the FAA, and that Davies unfairly gave Plaintiff an unsatisfactory rating. Id. ¶ 42 (gggg)-(kkkk);
>
> that Defendant Davies committed perjury during Plaintiff's July 17, 2002 arbitration hearing by testifying to "material matter" (i.e., that Plaintiff had failed his 709 ride) he did not believe to be true. Id. ¶ 68.

---

[3] It appears that Defendant Simpson retired from the FAA in 2001.

B. **Procedural History**

Plaintiff's litigation history against Simpson, Davies, and many of the other Defendants, which I briefly summarize here, extends well beyond the instant lawsuit. Shortly after US Airways hired Plaintiff, he filed a lawsuit against US Airways and ALPA in this court alleging racial discrimination in hiring and retaliation. See Garland v. USAir, Inc., 767 F. Supp. 715 (W.D. Pa. 1991). Plaintiff, who was represented by counsel at the time, prevailed on his claims and was awarded damages and retroactive seniority. US Airways also was enjoined from further discrimination in its hiring practices. See id.; Garland v. USAir, Inc., Civ. A. Nos. 86-890, 86-1943, 1991 WL 424045 (W.D. Pa. June 11, 1991).

On or about December 5, 2001, after his discharge from employment and while ALPA's grievance of that discharge was still proceeding, Garland filed a *pro se* "Civil Contempt Complaint for Damages and Bivens Action and Injunctive Relief" with this Court against US Airways, individual US Airways managers, and the Federal Defendants under the same docket number as his 1986 lawsuit. (Civ. A. No. 86-890, Docket No. 61.) As here, Garland alleged that his discharge as well as certain training failures were caused by race discrimination.

On December 2, 2002, Judge Ziegler entered an Order dismissing the Federal Defendants without prejudice on the grounds that Garland had not served them properly and had improperly sought to reopen the 1986 action and add them as new parties without leave of court. (Id., Docket No. 79.) The Court also *sua sponte* dismissed the portion of the case relating to US Airways without prejudice. See id.

On March 19, 2003, after the System Board issued its award upholding Plaintiff's discharge, Garland filed a Motion for Reconsideration of the December 2, 2002 Order, which Judge Ziegler denied on March 21, 2003. (Id., Docket Nos. 80, 81.) On May 7, 2003, Garland filed a "Motion for Trial de Novo and Hearing Date," again under his 1986 case number, alleging violations of Title VII of the Civil Rights Act of 1964 and the Railway Labor Act. (Id., Docket No. 82.) Judge Ziegler treated Garland's Motion as another Motion for Reconsideration of the December 2, 2002 Order and, on May 13, 2003, denied the Motion. (Id., Docket No. 83.) On November 28, 2003, the Court of Appeals dismissed Garland's appeal of Judge Ziegler's orders because it was untimely. (Id., Docket No. 87.)

Finally, on January 5, 2004, Plaintiff filed a voluminous "Motion to Vacate and Set Aside Order(s) upon Evidence of Fraud, Fraud upon the Court, Collusion and Corruption Pursuant to FRCP 60(b); Motion for Contempt Pursuant to 65(d); Motion to Add New Claims and New Parties Pursuant to FRCP 15 and FRCP 19; and Motion for Scheduling Order," again under the same docket number as his 1986 case. (Id., Docket No. 88.) Plaintiff named numerous defendants in the caption, including the Federal Defendants. On July 15, 2004, I denied the motion, finding, inter alia, that Plaintiff could not reopen his 1986 discrimination in hiring case to add additional claims and parties.

Plaintiff commenced this action on February 7, 2005 by filing an Application to Proceed *in Forma Pauperis* and attaching a copy of his Complaint. (Docket No. 1). I granted the application on February 10, 2005, and Plaintiff's Complaint was deemed

5

filed on that date. (Docket No. 2). Plaintiff never requested issuance of a summons and none was issued. On June 29, 2005, I granted Plaintiff's Motion to Amend his Complaint. (Docket No. 7). Plaintiff's first amended complaint named four new defendants. Again, there is no indication in the record that Plaintiff requested the issuance of a summons and none was issued. Plaintiff did not file a waiver of service of summons or adequate proof of service with respect to either his original or first amended complaint.

After over 120 days passed from when Plaintiff filed both his original and first amended complaints, my deputy clerk wrote to Plaintiff requesting that he file either proof of service or a written explanation of why service had not been made. In response, Plaintiff filed a Motion to amend his complaint a second time to add a new defendant and new allegations of retaliatory conduct. (Docket No. 11).

I granted Plaintiff's Motion to Amend on or about November 28, 2005, and his 17-count second amended complaint was deemed filed as of that date. (Docket No. 13). The Federal Defendants filed the instant motion to dismiss and supporting materials on June 29, 2006. (Docket Nos. 67, 68). Plaintiff opposes the Federal Defendants' Motion. (Docket No. 86). The Motion is now ripe for my review.[4]

---

[4] On August 24, 2006, I granted the United States' Motion to substitute itself for the Federal Defendants with respect to the tort counts against the Federal Defendants set forth in Counts 7, 8, 9, 10, 15, and 17 of Plaintiff's second amended complaint on the grounds that the Federal Defendants were acting within the scope of their federal employment at the time of the incidents alleged in the second amended complaint, and, therefore, were entitled to absolute immunity from damage liability on Plaintiff's state law tort claims under the Federal Tort Claims Act, as amended by the Westfall Act. See Docket No. 94. On January 30, 2007, I granted the United States' Motion to Dismiss those six counts pursuant to Federal Rule of Civil Procedure 12(b)(1). See Docket No. 116.

6

## II. LEGAL ANALYSIS

### A. Standard of Review

In deciding a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in the light most favorable to the plaintiff. Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988). I may dismiss a complaint only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45 (1957). In ruling on a motion for failure to state a claim, I must look to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." Colburn, 838 F.2d at 666. "The issue is not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Lake v. Arnold, 112 F.3d 682, 688 (3d Cir. 1997).

When ruling upon a 12(b)(6) motion, district courts generally may consider only the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, documents relied upon in the complaint, and items appearing in the record of the case. See Angstadt v. Midd-West Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

A motion to dismiss pursuant to Rule 12(b)(1) may present either a facial or a factual challenge to subject matter jurisdiction. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977). In contrast to a Rule 12(b)(6) motion or a Rule 12(b)(1) motion based on immateriality, a Rule 12(b)(1) motion based on the existence of jurisdiction in fact does not incorporate the presumption of truthfulness of the plaintiff's allegations. See id. Furthermore, the plaintiff bears the burden of persuading the court that it has jurisdiction as compared to the burden of the defendant under a Rule 12(b)(6) motion of convincing the court that the plaintiff has failed to state a claim. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). In further distinction to a Rule 12(b)(6) motion, when considering a Rule 12(b)(1) motion, the court may "go outside the bounds of the complaint" and make factual findings which are decisive to the issue, relying on evidence such as affidavits, depositions and other testimony. Cohen v. Kurtzman, 45 F. Supp. 2d 423, 429 (D.N.J. 1999) (citing Employers Ins. of Wausau v. Crown Cork & Seal Co., 905 F.2d 42, 45 (3d Cir. 1990)); Kennedy v. Runyon, 933 F. Supp. 480, 482 (W.D. Pa. 1996). If I determine that this Court does not have subject matter jurisdiction over the case, I must dismiss the action. See Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997).

As a pro se litigant, Plaintiff is entitled to a "less stringent" interpretation of his pleadings than those applied to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972); Molina v. City of Lancaster, 159 F. Supp. 2d 813, 818 (E.D. Pa. 2001). This leniency, however, "does not excuse a pro se plaintiff . . . from pleading the essential elements of his claim." Morris v. First Union Nat'l Bank, No. Civ.

8

A. 01-1953, 2002 WL 47961, at *2 (E.D. Pa. Jan. 14, 2002).

B. **Motion to Dismiss**

   1. **Service of Process**

The Federal Defendants challenge the sufficiency of service of process against them. In federal court, service of process upon federal agency employees such as the Federal Defendants is governed by Rule 4(i) of the Federal Rules of Civil Procedure. Rule 4(i) provides that:

> (1) Service upon the United States shall be effected
>
>> (A) by delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought or to an assistant United States attorney or clerical employee designated by the United States attorney in a writing filed with the clerk of the court or by sending a copy of the summons and of the complaint by registered or certified mail addressed to the civil process clerk at the office of the United States attorney and
>>
>> (B) by also sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States at Washington, District of Columbia, and
>>
>> (C) in any action attacking the validity of an order of an officer or agency of the United States not made a party, by also sending a copy of the summons and of the complaint by registered or certified mail to the officer or agency.
>>
>> (2)(A) Service on an agency or corporation of the United States, or an officer or employee of the United States sued only in an official capacity, is effected by serving the United States in the manner prescribed by Rule 4(i)(1) and by also sending a copy of the summons and complaint by registered or certified mail to the officer, employee, agency, or corporation.

> *(B) Service on an officer or employee of the United States sued in an individual capacity for acts or omissions occurring in connection with the performance of duties on behalf of the United States--whether or not the officer or employee is sued also in an official capacity--is effected by serving the United States in the manner prescribed by Rule 4(i)(1)* **and** *by serving the officer or employee in the manner prescribed by Rule 4 (e), (f), or (g). . . .*

Fed. R. Civ. P. 4(i) (emphasis added). Plaintiff bears the burden of proof regarding the validity of service. See Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993).

As set forth in the Procedural History above, Plaintiff did not properly serve either his original or first amended complaint. On November 28, 2005, I entered an Order (Docket No.12) allowing Plaintiff to amend his complaint a second time and setting forth stringent requirements with respect to service. Specifically, I allowed Plaintiff 120 days from the date of the order to serve his Second Amended Complaint on each Defendant named therein in the manner prescribed in Federal Rule of Civil Procedure 4. I explained to Plaintiff the availability of service by the U.S. Marshals pursuant to Federal Rule of Civil Procedure 4(c)(2) and informed him that if he chose to have the U.S. Marshals effect service, that he must complete a summons and a Marshal's Form 285 providing the names and addresses of each defendant and return the completed forms to the Clerk's office within 30 days, i.e., by December 28, 2005. See Docket No. 12. If Plaintiff timely completed and returned the appropriate paperwork, then the Clerk of Court was directed to issue summons and instruct the Marshals to serve the second amended complaint in accordance with the Federal Rules of Civil Procedure. Id.

The Federal Defendants argue that the second amended complaint should be dismissed against them because Plaintiff failed to properly serve them within 120 days of my November 28, 2005 Order and, thus, failed to comply with that Order. Defs.' Br. at 8-10.  Although the record indicates that each Federal Defendant was served personally, the Federal Defendants note that there is no indication that Plaintiff served, or directed that a copy of the summons and complaint be served on, the Attorney General in Washington, D.C., or the United States Attorney for the Western District of Pennsylvania or her designee, as required by the Rule 4(i).

I agree that Plaintiff's error in this regard is inexcusable and warrants dismissal of the second amended complaint against the Federal Defendants.  Although Plaintiff correctly points out that my November 28, 2005 Order required dismissal only where Plaintiff's own fault or inaction caused a failure to serve, this is exactly such a case.  Here, Plaintiff supplied personal addresses to the U.S. Marshal for the Federal Defendants, but he failed to check the box on his form that service was to be made to the United States or otherwise to alert the Marshals' Service to effectuate service in accordance with Rule 4(i)(2)(B).[5]  Because Plaintiff failed to comply with my November 28, 2005 Order – which gave Plaintiff more than reasonable time to correct this and any other service failures – and the applicable rules of civil procedure regarding service, his complaint against the Federal

---

[5] The instructions supplied to Plaintiff with the Form 285s provided clear instructions regarding Plaintiff's obligations with respect to service on an officer or agent of the United States. See, e.g., Docket Nos. 12, Ex. 3; 40.

11

Defendants must be dismissed.[6]

Even if service were proper, Plaintiff's second amended complaint against the Federal Defendants must be dismissed for the reasons set forth below.

### 2. Bivens Claim

Plaintiff's primary claim against the Federal Defendants is his Bivens claim set forth in Count 4 of the second amended complaint. A Bivens action "is the federal equivalent of the section 1983 cause of action against state actors." Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001). Through a Bivens action, "the victims of a constitutional violation by a federal agent" may sue to "recover damages against the official in federal court despite the absence of any statute conferring such a right." Carlson v. Green, 446 U.S. 14, 18 (1980) (citing Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)). The essence of Plaintiff's Bivens claim here is that the Federal Defendants' actions violated his constitutional rights and ultimately led to the revocation of his ATP Certificate by the FAA, without which he was not authorized to fly commercial airlines.

Plaintiff's Bivens claim fails against the Federal Defendants on multiple grounds. As an initial matter, this Court lacks subject-matter jurisdiction over Plaintiff's claim. Plaintiff admits in his response in opposition that the FAA issued an Order of Revocation of his ATP certificate and that he appealed that revocation to

---

[6] The fact that Defendant Simpson is now retired from the FAA does not affect the applicability of Rule 4(i)(B)(2) to him. Whether service on the United States is required is determined by the status of the federal official or employee at the time of the act or omission giving rise to the cause of action. The fact that the defendant is no longer an official or employee of the United States or a federal agency is immaterial. 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1107.

the National Transportation Safety Board ("NTSB") as provided in 49 U.S.C. § 44709 and the NTSB's Rules of Practice, 49 C.F.R. § 821.  Pl.'s Opp. Br. (Docket No. 86) at 17.  As the Federal Defendants explain in their brief (and Plaintiff does not dispute), Plaintiff subsequently entered into a written settlement agreement with the FAA in which the FAA agreed to withdraw the order of revocation and retain Plaintiff's ATP certificate for nine months to allow him to demonstrate his competence to the FAA's satisfaction and thereby retain his privileges.  See Fed. Defs.' Br. (Docket No. 68), Ex. A.  In turn, Plaintiff agreed to withdraw his appeal to the NTSB.  Plaintiff also agreed that he would not have any right to appeal, and would not appeal, the loss of any pilot privileges for which he had not demonstrated the pertinent qualifications within the allotted time frame.  Id.  If Plaintiff did not demonstrate the pertinent qualifications within the appropriate time period, he would be deemed to have voluntarily surrendered those privileges for cancellation.  Id.

The plain terms of the Settlement Agreement, which Plaintiff signed on or about October 3, 2002, expressly preclude Plaintiff from any further "appeal" of the loss of his pilot privileges, thus precluding this suit against the Federal Defendants. Even absent the Settlement Agreement, district courts simply do not have jurisdiction to review FAA orders under the guise of a Bivens action for damages against individual FAA employees.  See, e.g., Green v. Brantley, 981 F.2d 514, 519-20 (11th Cir. 1993) (district courts have no jurisdiction to review administrative orders in FAA matters or to consider Bivens-type actions for money damages against individual FAA officials who allegedly "conspired to present false accusations" against

13

the plaintiff and were responsible for the agency's revocation action); Gaunce v. de Vincentis, 708 F.2d 1290, 1291-93 (7th Cir. 1983) (district court lacked subject-matter jurisdiction over suit against two FAA officials, in their individual capacities, seeking money damages for alleged violations of plaintiff's fifth amendment due process rights); see also Platt v. Ihle, No. 91-2258, 1993 WL 219807 (4th Cir. June 22, 1993) (*per curiam*) (existing FAA and NTSB administrative procedures offer comprehensive remedial scheme that obviates the need for a Bivens cause of action and precludes plaintiffs from bringing a Bivens damages action against individual FAA officials) (citing Schweiker v. Chilicky, 487 U.S. 412 (1988)).

Apparently recognizing this principle, Plaintiff cites to two decisions of the Court of Appeals for the Ninth Circuit in an attempt to salvage his claim. See Pl.'s Opp. Br. at 17 (citing Mace v. Skinner, 34 F.3d 854 (9th Cir. 1994) and Foster v. Skinner, 70 F.3d 1084 (9th Cir. 1995)). These cases, however, are inapposite. Mace and Skinner simply held that district courts have jurisdiction to consider broad challenges to allegedly unconstitutional FAA practices. The court in both cases specifically distinguished claims raising broad constitutional challenges from claims, such as Plaintiff's, alleging case-specific mistreatment by FAA officials. Foster, 70 F.3d at 1087-88; Mace, 34 F.3d at 858-59. Moreover, at least one court within this circuit has disagreed with the Ninth Circuit's reasoning in its entirety. Rothman v. Hinson, No. Civ. A. 96-5944, 1997 WL 45029, at *2 (E.D. Pa. Jan. 30, 1997).

The Federal Defendants also argue in their Motion that Plaintiff's claim is time-barred by the applicable statue of limitations. See Docket No. 67. Although the

Federal Defendants do not elaborate on this argument in their brief, it appears from the face of Plaintiff's second amended complaint that his <u>Bivens</u> claim is indeed untimely. Because there is no statute of limitations for a <u>Bivens</u> claim, courts must borrow the most analogous state statute of limitations. <u>Napier v. Thirty or More Unidentified Fed. Agents</u>, 855 F.2d 1080, 1087 n.3 (3d Cir. 1988). In Pennsylvania, the two-year statute of limitations for personal-injury action applies. <u>Howard v. Mendez</u>, 304 F. Supp. 2d 632, 635 (M.D. Pa. 2004). The cause of action accrues, and the statute begins to run, when the plaintiff "knew or should have known of the injury upon which [the] action is based." <u>Id.</u> Here, the FAA revoked Plaintiff's ATP certificate in or around April 2002. With the exception of Defendant Davies' allegedly false testimony to the System Board in July 2002, all of the alleged misconduct of the Federal Defendants occurred, with Plaintiff's knowledge, prior to the revocation of Plaintiff's certificate. Plaintiff, however, did not file the instant lawsuit until February 2005 – far more than two years after any of these dates. Plaintiff's <u>Bivens</u> claim against the Federal Defendants fails for this reason as well.[7]

### 3. **Remaining Counts**

After carefully examining the remaining ten counts purportedly asserted against "each and every defendant," I find that Plaintiff also has failed to state a claim upon which relief can be granted against the Federal Defendants under any of these purported causes of action.

---

[7] As a result of these conclusions, I need not reach the Federal Defendants' alternative argument that they are entitled to qualified immunity because Plaintiff has failed to plead the existence of a clearly established constitutional right that the Federal Defendants allegedly violated.

As an initial matter, I note that, except for Count 1 (Title VII), none of the remaining counts make more than a passing reference to the Federal Defendants, let alone state how or why Plaintiff is entitled to relief against them. See Fed. R. Civ. P. 8(a) (setting forth notice pleading requirements). In addition, Plaintiff makes absolutely no argument in his brief in opposition as to why any of the remaining ten counts should not be dismissed against him. Simply including the Federal Defendants in the captions of each count or making generic and conclusory statements that these defendants acted unlawfully is insufficient to state a claim against them. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 & n.8 (3d Cir. 1997) (a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss).

Several of these counts against the Federal Defendants fail as a matter of law for the following substantive reasons as well.

### (a) Title VII (Count 1), Wrongful Termination (Count 3), and ADEA (Count 5)

In addition to the pleading deficiencies outlined above, Plaintiff's Title VII, wrongful termination,[8] and ADEA claims against the Federal Defendants fail because (1) neither Simpson nor Davies was an employee or agent of Plaintiff's former employer, US Airways, and (2) in any event, individuals are improper defendants in Title VII and ADEA lawsuits. See 42 U.S.C. §§ 2000e; 2000e-2; 29 U.S.C. § 623(a); see also,

---

[8] Although Plaintiff styles Count Three as a claim for "wrongful termination," he alleges therein that Defendants violated 42 U.S.C. § 2000e. See 2d Am. Compl. ¶ 55. Thus, it appears that Count Three is an extension of Plaintiff's Title VII claim.

16

e.g., Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (3d Cir. 1997) (Title VII); Hill v. Borough of Kutztown, 455 F.3d 225, 246 n.29 (3d Cir. 2006) (ADEA).

### (b) Section 1981 (Count 2)

Plaintiff's claim under 42 U.S.C. § 1981 is likewise not cognizable against the Federal Defendants as a matter of law. Among other things, section 1981 was amended in 1991 to provide that "the rights protected by this section are protected against impairment by non-governmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Since this amendment, the weight of authority has held that section 1981 does not protect against alleged discrimination under color of federal law. See, e.g., Davis-Warren Auctioneers v. FDIC, 215 F.3d 1159, 1161-62 (10th Cir. 2000) (citing cases); Davis v. U.S. Dep't of Justice, 204 F.3d 723, 725-26 (7th Cir. 2000); Lee v. Hughes, 145 F.3d 1272, 1277 (11th Cir. 1998). Although the parties have not cited any Third Circuit authority ruling on this issue, I agree that the plain language of section 1981(c) dictates this result. See 42 U.S.C. § 1981(c); Davis-Warren Auctioneers, 215 F.3d at 1161; Prince v. Rice, 453 F. Supp. 2d 14, 25-26 (D.D.C. 2006). Because Plaintiff sued the Federal Defendants in their capacity as federal agency employees, his section 1981 claim against them must fail for this reason as well.

### (c) Section 1985(3) (Count 6)

Plaintiff also fails to allege facts sufficient to show the existence of a conspiracy within the meaning of section 1985(3). Simply making generic and conclusory statements that the Federal Defendants conspired against him or otherwise acted unlawfully is insufficient to state a valid section 1985(3) claim

against them. Morse, 132 F.3d at 906 & n.8; see also, e.g., Jones v. City of Scranton, No. 3:06-CV-0738, 2006 WL 3242110 (M.D. Pa. Nov. 7, 2006) (section 1985(3) claim dismissed where complaint offered only conclusory allegations of concerted action); Pellegrino Food Prods. Co. v. City of Warren, 136 F. Supp. 2d 391, 409-10 (W.D. Pa. 2000) ("[C]onclusory allegations of concerted action without facts actually reflecting such action may be insufficient to state a conspiracy claim."); Sayles v. Commw. of Pa. Dep't of Pub. Welfare, 24 F. Supp. 2d 393, 398-99 (M.D. Pa. 1997) (no section 1985(3) claim where plaintiffs failed to provide any factual support of an agreement or communication of conspiracy and failed to bolster their "broad-ranging allegations of conspiracy" with anything more than "speculation and conjecture").

### (d) RICO (Count 13)

Although the RICO claim (Count 13) identifies the Federal Defendants by name in its opening paragraphs, see 2d Am. Compl. ¶¶ 160-161, it fails to allege any actions on the part of the Federal Defendants that would support a RICO claim against them. Among other things, Plaintiff's allegations clearly fail to establish a pattern of racketeering or a continuous scheme of criminal activity necessary to sustain a RICO claim, and I cannot envision any set of facts under which Plaintiff could establish such a claim in this case. See 18 U.S.C. § 1964(c); § 1962 (requiring a "pattern of racketeering activity"); § 1961(1) (defining "racketeering activity").[9]

### 4. Leave to Amend

---

[9] Plaintiff has so plainly failed to plead any facts that would even remotely support a claim against the Federal Defendants under the RLA (Count 11) or ERISA (Count 12), or for unjust enrichment (Count 14) or breach of contract (Count 16), that no further discussion of these counts is warranted.

I further find that additional amendment of Plaintiff's complaint would not cure the deficiencies outlined above. Because no amendment could render Plaintiff's claims against the Federal Defendants meritorious, the Second Amended Complaint is dismissed against them without leave to amend a third time. See Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir. 2002) ("[P]laintiffs whose complaints fail to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile."); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (grounds that can justify denial of leave to amend include undue delay, bad faith, dilatory motive, prejudice, and futility).

Even if Plaintiff could correct the deficiencies in his pleading, concerns of undue delay and prejudice prevent me from allowing further amendment at this juncture. See id. This is at least the second time Plaintiff has filed these or similar claims against the Federal Defendants in federal court since his discharge in 2001. See supra Section I.B. In addition, Plaintiff already has amended the instant complaint two times, no discovery has been taken, and the case is almost two years old (due primarily to Plaintiff's initial inaction and service deficiencies). Plaintiff's prolific and repeated filings also have put the Federal Defendants in the position of having to defend a case based primarily on events that happened five or more years ago. For these reasons as well, further leave to amend is denied. See Oran v. Stafford, 34 F. Supp. 2d 906, 913-14 (D.N.J. 1999), aff'd, 226 F.3d 275 (3d Cir. 2000).

### III. CONCLUSION

In short, even taking into account Plaintiff's pro se status and construing his pleadings liberally, his claims fail due to improper service, lack of subject-matter jurisdiction and/or because he has not alleged any set of facts against the Federal Defendants upon which relief could be granted. Accordingly, the Federal Defendants' Motion to Dismiss is granted, without leave to amend.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### ORDER OF COURT

AND NOW, this **2nd** day of March, 2007, after careful consideration of the parties' submissions and for the reasons set forth in the Opinion accompanying this Order, it is ORDERED that the Motion to Dismiss on Behalf of Defendants Rick Davies and Harold Simpson (Docket No. 67) is GRANTED and that all claims against Defendants Rick Davies and Harold Simpson set forth in Plaintiff's Second Amended Complaint are dismissed.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge