IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILIP A. GARLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | )   Civil Action No. 05-140 |
| | ) |
| US AIRWAYS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

On or about November 28, 2005, pro se Plaintiff Philip A. Garland ("Plaintiff" or "Garland") filed, with leave of court, a 17-count Second Amended Complaint in the above-captioned action against 24 Defendants including Defendants US Airways, Inc. ("US Airways"), Bruce Lakefield, Stephen Wolf, Rakesh Gangwal, Greg Gibson, Ed Bular, Don Matthews, Ron Schilling, David Siegel, Michelle Bryan, and Donna Lewis (collectively, "US Airways Defendants"), arising out of the termination of Plaintiff's employment as a pilot for US Airways.  See Docket No. 13.  Pending is the US Airways Defendants' Motion to Dismiss.  (Docket No. 82).  After a careful review of the submissions by the parties and for the reasons discussed in this Opinion, the Motion

1

to Dismiss is granted.[1]

# I. BACKGROUND

## A. Factual Background

Unless otherwise noted, the facts in this section are taken from Plaintiff's Second Amended Complaint.

Plaintiff was employed by US Airways as a pilot from 1982[2] until the termination of that employment on or about April 27, 2001.[3] At all pertinent times, Plaintiff was a dues-paying member of ALPA, the collective bargaining representative for pilots, including Plaintiff. ALPA filed a grievance on behalf of Plaintiff under the collective bargaining agreement ("CBA"), challenging the termination of Plaintiff's employment. US Airways Pilot's System Board of Adjustment ("System Board"), a five-member federal labor arbitration board, held an evidentiary hearing on the grievance on or about July 17, 2002. On February 7,

---

[1] I recognize that Plaintiff has filed notices of appeal with respect to four of my prior orders regarding Motions to Dismiss filed by other parties. Docket Nos. 110, 113, 118, 122 . Although a notice of appeal ordinarily divests the district court of jurisdiction, a premature notice of appeal does not have the same effect. Rather, the "district court 'should continue to exercise [its] jurisdiction when faced with clearly premature notices of appeal.'" Martinez v. Quality Value Convenience, Inc., 63 F. Supp. 2d 651, 653 n.1 (E.D. Pa. 1999) (quoting Mondrow v. Fountain House, 867 F.2d 798, 800 (3d Cir. 1989)), aff'd, 216 F.3d 1076 (3d Cir. 2000). Here, Plaintiff filed his notices of appeal without my having issued a final order in the case and, thus, the notices are "clearly premature." Fed. R. Civ. P. 54(b). Accordingly, I maintain jurisdiction over this action. See Martinez, 63 F. Supp. 2d at 653 n.1.

[2] US Airways originally hired Plaintiff in 1984. In 1986, Plaintiff sued US Airways alleging racial discrimination in US Airways' hiring and recruitment practices. See Garland v. US Air, Inc., 767 F. Supp. 715 (W.D. Pa. 1991). Following trial, in which Plaintiff prevailed, the Court ordered US Airways to, inter alia, assign Plaintiff retroactive seniority to November, 1982. See id.; Garland v. USAir, Inc., Civ. A. Nos. 86-890, 86-1943, 1991 WL 424045 (W.D. Pa. June 11, 1991).

[3] US Airways' stated reason for terminating Plaintiff's employment is that he no longer had a valid pilot's license, which is required to operate US Airways' aircraft. Plaintiff disputes this reason.

2003, the System Board issued a final opinion and award finding that US Airways was justified, pursuant to the CBA, in its decision to terminate Plaintiff's employment.

In the Second Amended Complaint, Plaintiff alleges, <u>inter alia</u>, that the US Airways' Defendants conspired with ALPA and others to terminate his employment and otherwise discriminate against him because of his race and age and to retaliate against him for prior discrimination complaints.  Plaintiff also alleges that the grievance process was "tainted and spoiled," that the evidentiary hearing was "suspect and substandard," and that there is evidence of "conspiracy, corruption and collusion" among ALPA, US Airways and others with respect to the grievance and arbitration proceeding.

## B.  **Procedural History**

### 1.  **Proceedings In This Court**

Plaintiff's litigation history against US Airways, which I summarize here, extends well beyond the instant lawsuit.  Shortly after US Airways hired Plaintiff, he filed a lawsuit against US Airways and ALPA in this court alleging racial discrimination in hiring and retaliation.  See <u>Garland v. USAir, Inc.</u>, 767 F. Supp. 715 (W.D. Pa. 1991). Plaintiff, who was represented by counsel at the time, prevailed on his claims and was awarded damages and retroactive seniority.  US Airways also was enjoined from further discrimination in its hiring practices.  See <u>id.</u>; <u>Garland v. USAir, Inc.</u>, Civ. A. Nos. 86-890, 86-1943, 1991 WL 424045 (W.D. Pa. June 11, 1991).

On or about December 5, 2001, after his discharge from employment and while ALPA's grievance of that discharge was still proceeding, Plaintiff filed a *pro se*

"Civil Contempt Complaint for Damages and Bivens Action and Injunctive Relief" with this Court against US Airways, individual US Airways managers, and two FAA inspectors under the same docket number as his 1986 lawsuit.  (Civ. A. No. 86-890, Docket No. 61.)  In it, Garland alleged that his discharge as well as certain training failures were caused by race discrimination.  On December 2, 2002, Judge Ziegler entered an Order dismissing the FAA inspectors as defendants without prejudice. (Id., Docket No. 79.)  The Court also *sua sponte* dismissed the portion of the case relating to US Airways without prejudice.  See id.

On March 19, 2003, after the System Board issued its award upholding his discharge, Plaintiff filed a Motion for Reconsideration of Judge Ziegler's December 2, 2002 Order, in which he alleged, among other things, contempt of court by US Airways and that US Airways engaged in "fraud, corruption, collusion, perjury, obstruction of justice, conspiracy, and other tortious conduct in order to obtain the draft arbitration award." (Id., Docket No. 80.) Judge Ziegler denied Plaintiff's motion on March 21, 2003.  (Id., Docket No. 81.)

On May 7, 2003, Plaintiff filed a "Motion for Trial de Novo and Hearing Date," again under his 1986 case number, alleging violations of Title VII and the Railway Labor Act.  (Id., Docket No. 82.)  In that Motion, he requested that the Court vacate the arbitration decision upholding his termination and hear his contempt and civil rights complaints "de novo."  See id.  Judge Ziegler treated Plaintiff's Motion as another Motion for Reconsideration of the December 2, 2002 Order and, on May 13, 2003, denied the Motion.  (Id., Docket No. 83.)  On November 28, 2003, the Court of

4

Appeals dismissed Plaintiff's appeal of Judge Ziegler's orders because it was untimely. (Id., Docket No. 87.)

Finally, on January 5, 2004, Plaintiff filed a voluminous "Motion to Vacate and Set Aside Order(s) upon Evidence of Fraud, Fraud upon the Court, Collusion and Corruption Pursuant to FRCP 60(b); Motion for Contempt Pursuant to 65(d); Motion to Add New Claims and New Parties Pursuant to FRCP 15 and FRCP 19; and Motion for Scheduling Order," again under the same docket number as his 1986 case.  (Id., Docket No. 88.)  In addition to US Airways and ALPA, Plaintiff named as Defendants a number of US Airways officers, employees, or attorneys; the two FAA inspectors; Defendant Johnson; the System Board; and the three non-dissenting members of the System Board.  On July 15, 2004, I denied this motion, finding, inter alia, that Plaintiff could not reopen his 1986 discrimination in hiring case to add additional claims and parties.

Plaintiff commenced this action on February 7, 2005 by filing an Application to Proceed in Forma Pauperis and attaching thereto a copy of his Complaint. (Docket No. 1).  I granted Plaintiff's Application to Proceed in Forma Pauperis on February 10, 2005, and his Complaint was deemed filed on that date.  (Docket No. 2). Plaintiff never requested issuance of a summons and none was issued.  On June 29, 2005, I granted Plaintiff's Motion to Amend his Complaint.  (Docket No. 7).  Plaintiff's First Amended Complaint named four new defendants.  Again, there was no indication in the record that Plaintiff requested the issuance of a summons and none was issued.  Plaintiff did not file a waiver of service of summons or adequate

proof of service with respect to either his original or first amended complaint.

After over 120 days passed from when Plaintiff filed both his original and first Amended Complaints, my deputy clerk wrote to Plaintiff requesting that he file, by November 14, 2005, either proof of service or a written explanation of why service had not been made.  In response, Plaintiff filed a Motion to amend his Complaint a second time to add a new defendant and new allegations of retaliatory conduct. (Docket No. 11).  I granted Plaintiff's Motion to Amend on or about November 28, 2005, and his Second Amended Complaint was deemed filed as of that date.  (Docket No. 13).  The US Airways' Defendants filed the instant Motion to Dismiss and supporting Brief on July 14, 2006.  (Docket Nos. 82, 83).[4]  Plaintiff opposes the Motion. (Docket No. 92).

## 2.  US Airways' Bankruptcy Proceedings

On or about August 11, 2002, US Airways filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Virginia.[5]  On or about October 1, 2002, Plaintiff filed a proof of claim in the bankruptcy proceeding for $17 million for alleged racial discrimination, retaliation, harassment, and defamation. Plaintiff indicated that this claim accrued on April 24, 2001, the approximate time of his termination from employment.   A joint plan of reorganization became

---

[4]  The US Airways Defendants later filed, with leave of court, a Supplemental Memorandum of Law, to which Plaintiff responded.  (Docket Nos. 102, 106).

[5]  For further discussion of the history of the US Airways' recent bankruptcy proceedings and Plaintiff's proofs of claim, see In re US Airways, Inc., No. 04-13819-SSM, 2006 WL 1331338 (Bkrtcy. E.D. Va. Mar. 6), aff'd, 2006 WL 2992495 (E.D. Va. Oct. 13, 2006).

effective on March 31, 2003.

On or about September 12, 2004, US Airways filed a second Chapter 11 petition for reorganization in the same court.  As in the first proceeding, Plaintiff filed a $17 million proof of claim for alleged race discrimination, harassment, retaliation, and defamation arising out of the termination of his employment.   On or about September 16, 2005, the Bankruptcy Court confirmed a Joint Plan of Reorganization of US Airways, Inc. and Its Affiliated Debtors and Debtors-in-Possession.  See Docket No. 83, Exs. 2, 3.  The claim bar date applicable to Plaintiff was February 3, 2005.

On March 6, 2006, the Bankruptcy Court issued an Opinion and Order ruling that (1) Plaintiff's first claim for race discrimination, harassment, retaliation, and defamation was rendered moot by the Joint Plan of Reorganization; (2) the proof of claim Plaintiff filed in the second bankruptcy proceeding was discharged; and (3) in any event, Plaintiff's claims were barred by the doctrine of res judicata because they were fully adjudicated in the arbitration before the System Board. See In re US Airways, Inc., 2006 WL 1331338, at *5.  The United States District Court for the Eastern District of Virginia affirmed this Order on October 13, 2006.  In re US Airways, Inc., 2006 WL 2992495.

## II.   **LEGAL ANALYSIS**

## A.  **Standard of Review**

In deciding a Motion to Dismiss under Rule 12(b)(6), all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in the light most favorable to the plaintiff.  Colburn v. Upper Darby Twp., 838 F.2d 663, 666

(3d Cir. 1988).  I may dismiss a complaint only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45 (1957).  In ruling on a motion for failure to state a claim, I must look to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer."  Colburn, 838 F.2d at 666.  "The issue is not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  Lake v. Arnold, 112 F.3d 682, 688 (3d Cir. 1997).

When ruling upon a 12(b)(6) motion, district courts generally may consider, in addition to the allegations contained in the complaint, only exhibits attached to the complaint, matters of public record, documents relied upon in the complaint, and items appearing in the record of the case.  See Angstadt v. Midd-West Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1195 (3d Cir. 1993).

A motion to dismiss pursuant to Rule 12(b)(1) may present either a facial or a factual challenge to subject matter jurisdiction.  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977).  In contrast to a Rule 12(b)(6) motion or a Rule 12(b)(1) motion based on immateriality, a Rule 12(b)(1) motion based on the existence of jurisdiction in fact does not incorporate the presumption of truthfulness of the

plaintiff's allegations.  <u>See id.</u>  Furthermore, the plaintiff bears the burden of persuading the court that it has jurisdiction as compared to the burden of the defendant under a Rule 12(b)(6) motion of convincing the court that the plaintiff has failed to state a claim.  <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991).  In further distinction to a Rule 12(b)(6) motion, when considering a Rule 12(b)(1) motion, the court may "go outside the bounds of the complaint" and make factual findings which are decisive to the issue, relying on evidence such as affidavits, depositions and other testimony.  <u>Cohen v. Kurtzman</u>, 45 F. Supp. 2d 423, 429 (D.N.J. 1999) (citing <u>Employers Ins. of Wausau v. Crown Cork & Seal Co.</u>, 905 F.2d 42, 45 (3d Cir. 1990)); <u>Kennedy v. Runyon</u>, 933 F. Supp. 480, 482 (W.D. Pa. 1996).  If I determine that this Court does not have subject matter jurisdiction over the case, I must dismiss the action. <u>See</u> <u>Robinson v. Dalton</u>, 107 F.3d 1018, 1021 (3d Cir. 1997).

As a <u>pro se</u> litigant, Plaintiff is entitled to a "less stringent" interpretation of his pleadings than those applied to "formal pleadings drafted by lawyers."  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Molina v. City of Lancaster</u>, 159 F. Supp. 2d 813, 818 (E.D. Pa. 2001).  This leniency, however, "does not excuse a <u>pro se</u> plaintiff . . . from pleading the essential elements of his claim." <u>Morris v. First Union Nat'l Bank</u>, No. Civ. A. 01-1953, 2002 WL 47961, at *2 (E.D. Pa. Jan. 14, 2002).

**B.  Motion to Dismiss**

### 1.  Service of Process

The US Airways' Defendants argue that Plaintiff failed to timely serve his second amended complaint on them.  I agree that dismissal is appropriate on this

basis against Defendants Lakefield, Gibson, Wolf, Gangwal, Schilling, Siegel, and Bryan only.

As set forth above, Plaintiff did not properly serve either his original or First Amended Complaint.  On November 28, 2005, I entered an Order allowing Plaintiff to amend his Complaint a second time and setting forth stringent requirements with respect to service.  Specifically, I gave Plaintiff 120 days from the date of the order to serve his Second Amended Complaint on each Defendant named therein in the manner prescribed in Federal Rule of Civil Procedure 4.  I explained to Plaintiff the availability of service by the U.S. Marshal pursuant to Rule 4(c)(2) and informed him that if he chose to have the U.S. Marshal effect service, that he must complete a summons and a Marshal's Form 285 providing the names and addresses of each Defendant and return the completed forms to the Clerk's office within 30 days, i.e., by December 28, 2005.  See Docket No. 12.  If Plaintiff timely completed and returned the appropriate paperwork, then the Clerk of Court was directed to issue summons and instruct the Marshal to serve the second amended complaint.  Id.

Here, there is no dispute that the US Airways Defendants were not served with the Second Amended Complaint within 120 days of its filing.  I disagree, however, that it is appropriate to dismiss Plaintiff's claims against the US Airways Defendants solely on this basis.  As my November 28, 2005 Order explained, "[i]f service of the Second Amended Complaint is not effected within 120 days of the date of this Order through any fault or inaction of Plaintiff, Plaintiff's action will be dismissed."  Docket No. 12 at 8 (emphasis added); see also Wilson v. Vaughn, No. Civ.

A. 93-6020, 1996 WL 528870, at *1 (E.D. Pa. Mar. 14, 1996) (If a "plaintiff provides adequate information to identify the party to be served, a complaint should not be dismissed under Rule 4(m) for the Marshals Service's failure to effectuate proper service."). Thus, I decline to dismiss Plaintiff's Second Amended Complaint against the US Airways' Defendants for improper service to the extent the US Airways Defendants argue untimeliness alone and not that Plaintiff failed to meet his 30-day deadline to supply the appropriate materials to the proper authorities.

Here, the US Airways Defendants argue that Plaintiff supplied incorrect address information to the U.S. Marshal with respect to Defendants Lakefield, Gibson, Wolf, Gangwal, Schilling, Siegel, and Bryan. Specifically, the US Airways Defendants note that Plaintiff instructed the U.S. Marshal to serve US Airways' registered agent, CT Corporation, rather than serve the defendants (or their authorized agents) individually as required by Federal Rule of Civil Procedure 4(e). The summonses and process receipts for these defendants were returned unexecuted on the basis that "CT Corporation will not except [sic] service for individuals, only LLC's or corporations." Docket Nos. 14-20. Because Plaintiff failed to supply the U.S. Marshal with proper addresses for these individuals or their authorized agents, he was not in compliance with my November 28, 2005 Order or the Federal Rules. Thus, Plaintiff's Second Amended Complaint against these Defendants must be dismissed.

I disagree, however, that the remaining Defendants (US Airways, Bular, Lewis, and Mathews) should be dismissed for failure to serve. Although the US Airways

Defendants contend that Plaintiff failed to serve Defendants Bular and Lewis individually, Plaintiff did not instruct the U.S. Marshal to serve them "care of CT Corporation" as he did with the Defendants dismissed above.  Rather, Plaintiff indicated on his Form 285 that Bular and Lewis should be served individually at "4000 East Sky Harbor Blvd., Phoenix, AZ 85034."  Docket Nos. 97, 100.  Moreover, unlike the summonses the Marshal attempted to serve on CT Corporation, the returns of service for Bular and Lewis were returned executed.  Although Bular and Lewis did not sign the forms personally, there is no indication that the person who did sign them was not an authorized agent of Bular or Lewis.[6]  I further decline to dismiss Defendants US Airways and Don Mathews for improper service because the US Airways Defendants argue only that service was untimely.  They do not contend that the information Plaintiff supplied to the Clerk and/or U.S. Marshal with respect to US Airways or Mathews was inaccurate or incomplete.  Also, Plaintiff represents in his response that he timely provided the Clerk of Court and/or U.S. Marshal with the appropriate materials, and, therefore, the late service was not his fault or a result of his inaction.[7]

## 2.  Claims Discharged By Bankruptcy Proceedings

US Airways argues that this Court lacks subject-matter jurisdiction over

---

[6]  The US Airways Defendants even indicate in their brief that the returns of service for Bular and Lewis were not posted to the docket at the time they filed their motion to dismiss and, therefore that they did not know what instructions Plaintiff gave to the Marshal regarding service on these defendants.  Docket No. 83 at 15 n.11.  The US Airways Defendants do not argue that "4000 East Sky Harbor Blvd." was an improper address.

[7]  The Forms 285 addressed to US Airways and Mathews are dated December 27, 2005, one day prior to Plaintiff's 30-day deadline.  See Docket Nos. 22, 51.

Plaintiff's claims against it and such claims must be dismissed because they were discharged by the confirmation of US Airways' bankruptcy plan.  I agree.

The Bankruptcy Code defines a "debt" as a "liability on a claim."  11 U.S.C. § 101(12).  It further defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  Id. § 101(5)(A).  This definition is broad enough to include an obligation from a civil action.  See McSherry v. Trans World Airlines, Inc. 81 F.3d 739, 740 (8th Cir. 1996); Cross v. K.B. Toys, No. 05 C 6137, 2006 WL 2437831, at*2 (N.D. Ill. Aug. 22, 2006).

Whether Plaintiff's claims against US Airways are barred depends on whether the alleged discrimination or other wrongful acts occurred before or after the claim bar date of February 3, 2005.  The Bankruptcy Code provides in this regard that:

> the confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation . . . whether or not a proof of claim based on such debt is filed or deemed filed under Section 501 of this title, such claim is allowed under Section 502 of this title, or the holder of such claim had accepted the plan . . . .

11 U.S.C. § 1141(d).

US Airways further points to Section 11.2 of the approved Reorganization Plan ("Plan") as well as paragraph 8 of the Confirmation Order to support its argument that it was released from any claims that arose prior to the Bar Date.  Section 11.2 of the Plan provides, in relevant part:

> Discharge of the Debtors.  Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or the Confirmation Order, the distributions and rights that are

13

provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Confirmation Date (but subject to the occurrence of the Effective Date), of any and all Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, rights, and Interests, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim or interest based upon such debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a claim or interest based upon such debt, right, or Interest is allowed under Section 502 of the Bankruptcy Code, or (c) the holder of such Claim, right, or Interest accepted the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all liabilities of and interests in the Debtors, subject to the Effective Date occurring.

Docket No. 83, Ex. 3, § 11.2.  Paragraph 8 of the Confirmation Order incorporates the discharge provided by the Plan and provides:

> <u>Discharge, Releases, Limitations of Liability and Indemnification</u>.  The discharge of the Debtors and any of their assets or properties provided in Section 11.2 of the Plan, the releases set forth in Sections 11.4 and 11.5 of the Plan, and the exculpation and limitation of liability provisions set forth in Section 11.8 of the Plan, each as amended to the extent set forth in paragraph 51, are deemed incorporated in this Confirmation Order as if set forth in full herein and are hereby approved in their entirety.

Docket No. 83, Ex. 2, ¶ 8.

Under the Plan and Confirmation Order, there also is an injunction in place permanently barring the commencement or continuation of any lawsuit or other proceeding against US Airways related to a pre-Confirmation Date claim.  <u>See</u> Confirmation Order ¶ 9 (Docket No. 83, Ex. 2); Plan § 11.10 (Docket No. 83, Ex. 3).

14

These provisions are consistent with section 524(a)(2) of the Bankruptcy Code which provides:  "A discharge in a case under this title . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ."  11 U.S.C. § 524(a)(2).

Under the above provisions of the Bankruptcy Code, the Plan, and the Confirmation Order, any claims Plaintiff had or may have had that arose prior to the February 3, 2005 Bar Date are discharged and cannot be the subject of this or any other litigation.  With two minor exceptions, all of Plaintiff's claims against US Airways in this case arose before the Bar Date and, accordingly, have been discharged.[8]  See McSherry, 81 F.3d at 740-41; Kresmery v. Serv. Am. Corp., 227 B.R. 10, 13-14 (D. Conn. 1998); Cross, 2006 WL 2437831, at **2-4; see also In re US Airways, Inc., 2006 WL 1331338, at *5 (disallowing Plaintiff's $17 million proof of claim in US Airways' bankruptcy because it was discharged).

Although difficult to understand, Plaintiff appears to argue in his response that the Bankruptcy Court entered a "Stipulation and Consent Order granting Limited Relief from the Plan Injunction" in US Airways' first bankruptcy that permits him to pursue his case in this court.  Docket No. 92 at 3-4; see also In re US

---

[8] The two exceptions are allegations in Plaintiff's section 1985(3) claim (Count 6) and his breach of contract claim (Count 16) which describe an alleged telephone conversation Plaintiff had with US Airways' bankruptcy counsel, Sarah Boehm, on October 17, 2005.  Although these portions of Counts 6 and 16 appear to have accrued after the Bar Date, the allegations fail to state a claim against US Airways upon which relief can be granted for the same reasons set forth in Section II.B.5, infra.

Airways, Inc., 2006 WL 1331338, at *2 (mentioning the consent order).  It does not appear that either party provided me with a copy of the Consent Order. Plaintiff, however, purports to quote the Order as follows:

> To the extent the [Western District of Pennsylvania] determines that the Claimant is entitled to a liquidated claim against the Reorganized Debtors such claim shall be considered an allowed general unsecured claim under the [Case No. 02-83984] Plan and will be paid in accordance with the terms of the [Case No. 02-83984] Plan.  The [Case No. 02-83984] Plan Injunction shall remain in full force and effect in all other respects.

Docket No. 92 at 4.

Even if Plaintiff's recitation of this Order is accurate, it does not change my conclusion that Plaintiff's claim was discharged in bankruptcy and must be dismissed.  As an initial matter, this Order was entered as part of Plaintiff's first bankruptcy in 2002 and appears to have applied to Plaintiff's prior litigation in this court under Plaintiff's 1986 case number.  There is no indication that this Order applied to US Airways' second bankruptcy or that a similar order was entered in the bankruptcy court with respect to Plaintiff's instant litigation in this Court.  Even more fundamentally, the Order merely states that if this Court determined that Plaintiff was entitled to a liquidated claim against US Airways, then the claim would be considered an "allowed general unsecured claim" under the 2002 bankruptcy Plan and would be paid in accordance with terms of that Plan.  As explained by the Bankruptcy Court, although the first Plan provided that "allowed unsecured claims" would receive a distribution of newly issued stock in US Airways Group, Inc., those rights were extinguished in the second bankruptcy

Plan, rendering Plaintiff's claim in the first bankruptcy moot.  In re US Airways, Inc., 2006 WL 1331338, at *4.[9]

In any event, even if the Bankruptcy Plan and Confirmation Order do not bar Plaintiff's current claims against US Airways in this Court, those claims nevertheless fail as a matter of law for the reasons set forth below.

**3.  Res Judicata**

Plaintiff's claims for race discrimination, harassment, and retaliation are barred by the doctrine of res judicata.  The federal law of res judicata or claim preclusion bars a cause of action where there "has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."  Banks v. Hayward, No. Civ. A. 06-1572, 2007 WL 120045, at *3 (W.D. Pa. Jan. 10, 2007) (quoting Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991)); see also Montana v. United States, 440 U.S. 147, 153 (1979) ("[A] final judgment on the merits bars further claims by parties or their privies based on the same cause of action.").  The purpose underlying the doctrine of res judicata "is to relieve the parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudications."  Turner v. Crawford Square

---

[9] Plaintiff also argues that his claims are not subject to discharge because they are the result of US Airways' "willful and malicious" conduct.  Docket No. 92 at 4-5.  Although sections 523(a)(6) and 1141(d)(2) of the Bankruptcy Code exclude debts from discharge in the case of an individual debtor, that exception does not apply to a Chapter 11 corporate debtor.  In re US Airways, Inc., 2006 WL 1331338, at *4 n.3.  Rather, Chapter 11 corporate debtors receive "a discharge of all pre-confirmation debts unless the plan is a liquidating plan and the debtor does not engage in business after consummation of the plan."  Id.

Apartments III, L.P., 449 F.3d 542, 551 (3d Cir. 2006) (quoting Balent v. City of Wilkes-Barre, 669 A.2d 309, 315 (Pa. 1995)).

With respect to Plaintiff's claims against US Airways for race discrimination, harassment, and retaliation under Title VII and 42 U.S.C. § 1981[10] arising out of the termination of his US Airways employment, the res judicata test is plainly met.  As set forth above, the federal Bankruptcy Court in Virginia ruled on March 6, 2006 that these claims were barred by res judicata or claim preclusion because they were fully adjudicated in the System Board arbitration, as well as in this Court and before the United States Court of Appeals for the Third Circuit.  In re US Airways, Inc., 2006 WL 1331338, at *5.  The United States District Court for the Eastern District of Virginia affirmed this decision on October 13, 2006.  In re US Airways, Inc., 2006 WL 2992495, at *4.  The parties and claims in this case are identical.  Thus, I am bound by the Bankruptcy Court's decision, as affirmed by the United States District Court for the Eastern District of Virginia, that res judicata applies.  See 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4435 ("[D]ismissal of a second action on the ground that it is precluded by a prior action is itself effective as res judicata, and a judgment on the merits that forecloses further litigation of the preclusion question in a third action."); Haefner v. City of Lancaster, 566 F. Supp. 708, 710-11 (E.D. Pa. 1983)(same).

---

[10]  Although Plaintiff apparently only presented a Title VII claim to the bankruptcy court, the res judicata doctrine bars his section 1981 race discrimination, retaliation, and harassment claims as well given that the elements of a successful employment discrimination claim are virtually identical under the two statutes.  Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999); see also Davis v. U.S. Steel Supply, 688 F.2d 166, 177 (3d Cir. 1982) (section 1981 claim barred by res judicata where prior court had reviewed state agency's decision in plaintiff's action under local civil rights ordinance).

Plaintiff argues in his opposition brief that the arbitration award is not res judicata because it only adjudicated his rights under the CBA and he did not thereby waive his statutory rights to relief in federal court under Title VII and Section 1981.  As set forth above, however, the federal bankruptcy and district courts in Virginia already decided this issue (i.e., whether res judicata applies) in favor of US Airways.  Plaintiff is not free to litigate the issue again in this court. See id.[11]

### 4. State-Law Claims Preempted By the RLA

As set forth above, Plaintiff's Second Amended Complaint contains seventeen counts.  Sixteen of those counts are asserted against the US Airways' Defendants, including eight claims under state law: Intentional infliction of emotional distress (Count 7); negligent infliction of emotional distress (Count 8); libel/slander (Count 9); negligent supervision (Count 10); unjust enrichment (Count 14); tortious interference with prospective economic advantage (Count 15); breach of contract (Count 16); and legal malpractice (Count 17).[12]  The US Airways' Defendants argue, however, that these state-law claims are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151, et seq.  I agree.

---

[11]  The record suggests that Plaintiff has appealed the decision of the United States District Court for the Eastern District of Virginia to the United States Court of Appeals for the Fourth Circuit. See Docket No. 106, Ex. 1.  To date, there is no indication that the Court of Appeals has ruled on that appeal.  Even if an appeal is pending, however, that fact does not change the res judicata effect of the district court's decision.  See Banks, 2007 WL 120045, at *3 n.6 (citing cases and stating that judgment of lower court remains a "final" judgment for res judicata purposes notwithstanding the fact that an appeal is pending).

[12]  Although Plaintiff styles Count Three of his second amended complaint as a claim for "wrongful termination," he alleges therein that Defendants US Airways and ALPA violated 42 U.S.C. § 2000e.  See 2d Am. Compl. ¶ 55.  Thus, it appears that Count Three is an extension of Plaintiff's Title VII claim rather than an independent state law claim.

Under the RLA, carriers establish Boards of Adjustment ("System Boards") to resolve "minor disputes," i.e., disputes "growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions."  45 U.S.C. § 184.  Minor disputes must be resolved through the grievance process or submitted to a System Board, and parties to a CBA are precluded from bringing such claims in a judicial forum.  In this regard, when the resolution of a covered employee's state law claim depends on the meaning of the CBA, the application of state law is preempted.  Pa. Fed'n of Bhd. of Maint. Employees v. Nat'l R.R. Passenger Corp., 989 F.2d 112, 115 (3d Cir. 1993).

Here, the US Airways' Defendants cannot be liable to Plaintiff under any of his state-law theories because those purported causes of action are preempted by the RLA.[13]  In similar cases, courts have held that such claims constitute "minor disputes" that are governed by collective bargaining agreements and are preempted by the RLA.  See, e.g., Capraro v. UPS, 993 F.2d 328, 332-33 (3d Cir. 1993) (wrongful discharge, breach of contract, promissory estoppel, and tortious interference with contract claims); Calvert v. Trans World Airlines, 959 F.2d 698, 700 (8th Cir. 1992) (intentional infliction of emotional distress); Grote v. Trans World Airlines, Inc., 905 F.2d 1307, 1309-10 (9th Cir. 1990) (intentional infliction of emotional distress, wrongful termination, breach of contract, defamation);

---

[13]  Plaintiff's breach of contract claim is preempted to the extent it is based on an alleged breach of the CBA by US Airways.

<u>Szarka v. Reynolds Metals Co.</u> 17 F. Supp. 2d 115, 128 (N.D.N.Y. 1998) (negligent supervision preempted by LMRA).[14]

Accordingly, Plaintiff's state law claims are barred and must be dismissed.[15]

### 5. **Remaining Federal Claims**

To the extent not barred by the bankruptcy discharge or res judicata, Plaintiff's remaining federal claims against the US Airways Defendants likewise fail to state a claim upon which relief can be granted.

First, Plaintiff's ADEA and ERISA claims (Counts 5 & 12) fail because, among other things, he failed to exhaust his administrative remedies with respect to those claims. Under the ADEA, a plaintiff in Pennsylvania (a deferral state) must first file a charge of discrimination with the EEOC within 300 days of the date on which the allegedly unlawful employment practice occurred. <u>See</u> 29 U.S.C. § 626(d)(2). Even if a plaintiff timely files an administrative charge, he cannot proceed with his claims in federal court unless he first receives a right-to-sue letter and files his claim within ninety days thereafter. <u>Id.</u> § 626(e). Here, Plaintiff does not allege anywhere in his second amended complaint that he filed any charge of discrimination with respect to his ADEA claim and/or that he received a right-to-sue letter and timely filed his claims thereafter. Rather, he refers only to charges of <u>race</u> discrimination and retaliation he filed previous to his 1986

---

[14]  The standard for LMRA preemption is "virtually identical" to that for RLA preemption. <u>Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246, 260 (1994).

[15]  In his response, Plaintiff argues only that his statutory discrimination, retaliation and harassment claims are not preempted by the RLA. He does not argue that his state law claims escape RLA preemption. Docket No. 92 at 7-8.

discriminatory hiring case.  <u>See</u> 2d Am. Compl. ¶ 37.  Accordingly, Plaintiff's ADEA claim fails as a matter of law and must be dismissed.[16]

Plaintiff likewise does not allege that he exhausted his administrative remedies with respect to his ERISA claim.  This claim, which contends that the US Airways Defendants conspired with the ALPA Defendants and Pension Benefit Guaranty Corporation ("PBGC") to deny Plaintiff his proper pension benefits, is governed by 29 U.S.C. § 1303.  PBGC regulations, however, provide an administrative process and procedures that an individual must pursue prior to filing suit.  <u>See</u> 29 C.F.R. §§ 4003.7, .21, .51.  Plaintiff does not allege that he pursued these administrative remedies prior to filing suit.  Accordingly, his ERISA claim must be dismissed.  <u>See id.</u>[17]

Second, Plaintiff's Section 1985(3) and RLA claims (Counts 6 & 11) fail because they are time-barred.  The statute of limitations applied to claims under 42 U.S.C. § 1985(3) in Pennsylvania is two years.  <u>See</u> <u>Lake v. Arnold</u>, 232 F.3d 360, 368 (3d Cir. 2000) (borrowing Pennsylvania's two-year personal injury statute of limitations).  In Count 6, Plaintiff argues, in part, that US Airways unlawfully

---

[16] These same arguments apply to Plaintiff's Title VII claim for race discrimination, retaliation, and harassment as well.  Thus, even if Plaintiff's Title VII claim against US Airways were not barred by the bankruptcy discharge or res judicata, it would fail as a matter of law for failure to exhaust administrative remedies.  <u>See</u> 42 U.S.C. § 2000e-5(e), (f).

[17] Plaintiff's only argument in his opposition is that no exhaustion requirement should apply because PBGC did not issue a formal determination within a reasonable time and, therefore, he is entitled to bring suit under the Administrative Procedures Act ("APA") to compel agency action.  <u>See</u> Docket No. 92 at 12.  I disagree.  First, this is not a claim under the APA to compel agency action.  Rather, Plaintiff is attempting to bypass the administrative process altogether.  Second, even if the exhaustion requirement could be excused where prejudice results from unreasonable delay, I find that matters have not yet reached that point under the facts as alleged in Plaintiff's complaint.  <u>See</u> <u>Boivin v. US Airways, Inc.</u>, 446 F.3d 148, 158 (D.C. Cir. 2006).

conspired with ALPA and other defendants to deprive him of his federal airman certifications, thereby depriving him, inter alia, of his ATP certificate as well as his employment and related benefits. All of Plaintiff's allegations in this regard concern events that took place prior to or shortly after the termination of his employment in April 2001. Plaintiff, however, did not file the instant Complaint until almost four years after these events. Thus, this portion of Plaintiff's section 1985(3) conspiracy claim is time-barred and must be dismissed.[18]

It appears in Count 11 that Plaintiff asserts a breach of the duty of fair representation under the RLA against Defendant ALPA and a corresponding claim for breach of the CBA against US Airways. A six-month statute of limitations applies to such claims. See West v. Conrail, 481 U.S. 35, 38 (1987); DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 172 (1983). Here, the absolute latest any RLA claim could have accrued against US Airways was February 7, 2003, when the System Board issued its decision denying Plaintiff's grievance. Although the allegations

---

[18] The remainder of Plaintiff's § 1985(3) claim consists of allegations that US Airways' counsel of record, Sarah Bean [sic], as part of a conspiracy against him, "willfully and deliberately misinformed Plaintiff that a Bankruptcy Court hearing scheduled for October 20, 2005 had been continued until December 15, 2005." See 2d Am. Compl. ¶¶ 83-89. Although not barred by the statute of limitations, these allegations fail to state a claim against the US Airways Defendants as a matter of law. Plaintiff's own allegations show that the hearing on the objection at issue was indeed continued until December 15, 2005. See id. ¶ 86. Thus, Ms. Bean's [sic] alleged representations did not deprive Plaintiff of his right to be heard on this issue. See also In re US Airways, Inc., 2006 WL 1331338, at **5-6.

Plaintiff's section 1985(3) claim also fails in its entirety because he fails to allege facts sufficient to show the existence of a conspiracy within the meaning of section 1985(3). Simply making generic and conclusory statements that the US Airways Defendants conspired against him or otherwise acted unlawfully is insufficient to state a valid section 1985(3) claim against them. See, e.g., Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 & n.8 (3d Cir. 1997); Jones v. City of Scranton, No. 3:06-CV-0738, 2006 WL 3242110 (M.D. Pa. Nov. 7, 2006); Pellegrino Food Prods. Co. v. City of Warren, 136 F. Supp. 2d 391, 409-10 (W.D. Pa. 2000); Sayles v. Commw. of Pa. Dep't of Pub. Welfare, 24 F. Supp. 2d 393, 398-99 (M.D. Pa. 1997). Plaintiff's § 1985(3) claim also fails to implicate a constitutional right that has been violated. See Brown v. Philip Morris Inc., 250 F.3d 789, 805-06 (3d Cir. 2001).

in the second amended complaint demonstrate that Plaintiff was aware of the System Board's decision, as well as the alleged acts and/or omissions giving rise to his claim against US Airways as of that date, Plaintiff did not file the instant action until February 2005 – well after the six-month statute of limitations expired. Because Plaintiff's RLA claim is untimely, it must be dismissed as a matter of law.

Third, Plaintiff's RICO claim against US Airways (Count 13) must be dismissed because his allegations clearly fail to establish a pattern of racketeering or a continuous scheme of criminal activity necessary to sustain a RICO claim, and I can not envision any set of facts under which Plaintiff could establish such a claim in this case.  See 18 U.S.C. § 1964(c); § 1962 (requiring a "pattern of racketeering activity"); see also id. § 1961(1) (defining "racketeering activity").

## 6. **Claims Against The Individual US Airways' Defendants**

To the extent any of Plaintiff's sixteen counts against the individual US Airways' Defendants survive despite the bankruptcy, res judicata, and other rulings above (and even if these defendants were served properly, which seven of them were not), I find that Plaintiff has failed to state any claim against these Defendants upon which relief can be granted.

Significantly, I note that the only counts in which Plaintiff identifies a specific individual Defendant who allegedly violated his rights are:  Count 1 (Title VII - Bular, Matthews, Wolf, and Gangwal), Count 9 (trade libel/slander - Matthews), Count 13 (RICO - all individual defendants except Lakefield), and Count 17 (legal malpractice - Lewis).  None of the remaining counts mention the individual US

Airways Defendants, let alone state how or why Plaintiff is entitled to relief against them.  <u>See</u> Fed. R. Civ. P. 8(a) (setting forth notice pleading requirements).  Simply referring to the individual US Airways Defendants in the captions of each count or making generic and conclusory statements that these defendants acted unlawfully is insufficient to state a claim against them.  <u>Morse</u>, 132 F.3d at 906 & n.8.  Thus, with the possible exception of any specific allegations against individuals mentioned in Counts 1, 9, 13, and 17, Plaintiff's claims against the individual US Airways Defendants must be dismissed for this reason alone.

Further, although the Title VII claim (Count 1) identifies Defendants Bular, Matthews, Wolf, and Gangwal by name, it fails as a matter of law because there is no individual liability under Title VII.  <u>See</u> <u>Wilson v. Children's Museum of Pittsburgh</u>, No. 05CV1758, 2006 WL 1310512, at *2 (W.D. Pa. May 12, 2006) (citing <u>Sheridan v. E.I. Dupont de Nemours & Co.</u>, 100 F.3d 1061, 1077 (3d Cir. 1996)).

Similarly, although Plaintiff's RICO claim identifies all of the individual Defendants except Lakefield by name, it too fails as a matter of law for the reasons set forth in Section II.B.6, <u>supra</u>.

Finally, Plaintiff's libel/slander claim (Count 9) against Defendant Matthews and his legal malpractice claim (Count 17) against Defendant Lewis fail because, among other things, they are time-barred.  The statute of limitations for libel or slander claims in Pennsylvania is one year.  42 Pa. Cons. Stat. § 5523(1).  Plaintiff, however, does not identify any allegedly defamatory statements made within the year preceding the filing of this action.  2d Am. Compl. ¶¶ 107-110.  Thus, his

defamation claim must be dismissed as untimely.  The Pennsylvania statute of limitations for legal malpractice claims is two years. Pettit v. Smith, 241 B.R. 847, 850 (E.D. Pa. 1999).  In Count 17, Plaintiff alleges that Lewis violated a duty of professional legal care to him at the federal arbitration hearing on July 17, 2002. 2d Am. Compl. ¶ 195.  Because this claim plainly arose well over two years before Plaintiff filed the instant Complaint, it also is untimely and must be dismissed.

### C.  **Leave to Amend**

I further find that additional amendment of Plaintiff's Complaint would not cure the deficiencies outlined above.  Because no amendment could render Plaintiff's claims against the US Airways' Defendants meritorious, the Second Amended Complaint is dismissed without leave to amend a third time.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir. 2002) ("[P]laintiffs whose complaints fail to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile."); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (grounds that can justify denial of leave to amend include undue delay, bad faith, dilatory motive, prejudice, and futility).

Even if Plaintiff could correct the deficiencies in his pleading, concerns of undue delay and prejudice prevent me from allowing further amendment at this juncture.  See id.  This is at least the third time Plaintiff has filed these or similar claims in federal court since his discharge in 2001.  In addition, Plaintiff already has amended the instant Complaint two times, no discovery has been taken, and the case is over two years old (due primarily to Plaintiff's initial inaction and

26

service deficiencies).   Further, Plaintiff's prolific and repeated filings not only have cost Defendants considerable time and expense, but now Defendants are in the position of having to defend a case based primarily on events that happened five or more years ago.   For all of these reasons, further leave to amend is denied.   See <u>Oran v. Stafford</u>, 34 F. Supp. 2d 906, 913-14 (D.N.J. 1999), <u>aff'd</u>, 226 F.3d 275 (3d Cir. 2000).

### III.  <u>CONCLUSION</u>

In short, even taking the allegations in Plaintiff's Second Amended Complaint as true, I find that Plaintiff's claims against the US Airways' Defendants must be dismissed, without leave to amend, for all of the reasons set forth herein.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### <u>ORDER OF COURT</u>

AND NOW, this  **14th**  day of March, 2007, after careful consideration of the parties' submissions and for the reasons set forth in the Opinion accompanying this Order, it is ORDERED that the US Airways Defendants' Motion to Dismiss (Docket No. 82) is GRANTED and that all claims against Defendants US Airways, Bruce Lakefield, Stephen Wolf, Rakesh Gangwal, Greg Gibson, Ed Bular, Don

Matthews, Ron Schilling, David Siegel, Michelle Bryan, and Donna Lewis set forth in Plaintiff's Second Amended Complaint are dismissed.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge